AMERICAN NATIONAL BANK AND TRUST COMPANY, Plaintiff-Appellee and Cross-Appellant, v. LESTER STEINER, Defendant (Paul Skulsky, Defendant-Appellant and Cross-Appellee).

First District (2nd Division) No. 1—90—1254

Opinion filed December 24, 1991.

Robert A. Holstein, John M. Mack, and Aron D. Robinson, all of Holstein, Mack & Klein, of Chicago, for appellant.

Gerald G. Saltarelli, Michael A. Stick, and Mary L. Hayes, all of Butler, Rubin, Newcomer, Saltarelli, Boyd & Krasnow, of Chicago, for appellee.

PRESIDING JUSTICE SCARIANO delivered the opinion of the court:

On May 20, 1982, in exchange for a $1.2 million loan obtained from plaintiff American National Bank and Trust Company (Bank), defendant Lester Steiner gave his two promissory notes, on which defendant Paul Skulsky agreed to be guarantor. Each of Skulsky's guaranties contained provisions which gave the Bank the right to recover costs and attorney fees "paid or incurred by the Bank in en-

deavoring to collect the indebtedness, \*\*\* or in enforcing this guaranty."

At the same time, Skulsky executed another agreement with the Bank in which he pledged several notes issued by Tele-Communications, Inc. (TCI), as collateral on his guaranties. The pledge contained its own attorney fees provision which stated, "[u]pon non-payment when due of any of the Obligations, \*\*\* the Bank may apply the net proceeds, after deducting all costs, expenses and attorneys' fees incurred at any time in the collection, protection and sale of the collateral and the Obligations." When Steiner defaulted on March 3, 1983, the Bank brought suit in the circuit court against Steiner and Skulsky to recover on the notes and the guaranties. In his answer, Skulsky admitted that he had executed the guaranties but raised several affirmative defenses.

After the default, the Bank notified TCI that it had acquired a security interest in the notes which Skulsky had pledged as collateral for his guaranties of Steiner's obligations, and although the Bank requested TCI to take no action adverse to the Bank, it nevertheless made some payments on the notes to Skulsky. As a result, on February 27, 1984, the Bank filed suit against TCI in Colorado, TCI's principal place of business, and joined Skulsky as a party. The Bank's complaint sought a declaration as to its rights in the notes and judgment for the balance due thereon, plus the Bank's "costs in this action and \*\*\* costs of collection including its attorney's fees." In his answer, Skulsky again admitted that he had executed the guaranties, but raised the same affirmative defenses, among others, that he had asserted in the Illinois action.

On August 13, 1985, the Bank was awarded summary judgment in the Illinois action. While defendant's appeal was pending in this court, the Bank filed supplemental proceedings to domesticate the Illinois judgment in Florida, where Steiner and Skulsky resided or had assets, and in New Jersey, where Skulsky also had a residence and owned property.

On October 25, 1985, the Colorado trial court issued a ruling in favor of the Bank, giving full faith and credit to the judgment rendered against Skulsky by the Illinois circuit court. On July 22, 1986, this court, in an unpublished order rendered under Supreme Court Rule 23, reversed and remanded the judgment of the circuit court, holding that there were genuine issues of material fact to be tried regarding Skulsky's affirmative defenses. Thereupon, the Bank dismissed its New Jersey action but was granted leave to refile the case at a later date, and it "terminated" the Florida proceeding.

After Skulsky appealed the Colorado judgment, the court of appeals of that State remanded the case to the trial court for further consideration, giving full faith and credit to this court's reversal of the circuit court's ruling. When, however, in January of 1988, the trial court in Colorado conducted proceedings on Skulsky's affirmative defenses, it rejected all of them, including those he had raised in the Illinois action, and entered an order granting declaratory relief in favor of the Bank, all of which was upheld by the Colorado Appellate Court. Neither fees nor costs were litigated in Colorado, New Jersey, or Florida.

On December 9, 1988, after this court had remanded the case, the circuit court awarded summary judgment in favor of the Bank, and on January 6, 1989, the Bank filed its petition for the attorney fees and court costs it had expended in all four of its actions. On March 12, 1990, the circuit court granted the petition except for those fees and costs related to the Florida and New Jersey actions, stating:

> "I will grant this motion with the exception of what's claimed for the work in New Jersey and Florida. The Colorado case and in this case, it seems to be involved with the same issues. I'm not sure what Florida involved."

On April 6, 1990, the court entered final judgment in the Bank's favor, awarding the Bank $769,449.01 as principal and $482,393.76 as accrued interest on the notes, plus $287,055.05 in fees and costs. Skulsky appeals the court's award of attorney fees and costs to the Bank in the Colorado action, as well as the award of certain fees in the Illinois action, and the Bank cross-appeals the court's denial of attorney fees and costs in the Florida and New Jersey proceedings.

THE COLORADO CLAIM

Skulsky contends that the Bank is not entitled to attorney fees relating to the Colorado action because "[a]ny claim arising from the action is now barred" by the defense of *res judicata*. Citing *In re Marriage of Firestone* (1987), 158 Ill. App. 3d 887, 891, Skulsky maintains that since the Bank had the opportunity to litigate fees in the Colorado court, *"[r]es judicata* will bar relitigation of any issue or claim that was raised or could have been raised in the previous case." (Accord *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 251-52.) The Bank responds that its "rights to such fees under the Guaranties was [*sic*] not and could not have been litigated in Colorado" because the purpose of the Colorado case was to enforce its rights in the TCI notes, and was not to enforce Skulsky's guaranties. The Bank further argues that "[h]ad the Bank attempted to collect attorney fees in Colorado, *** Skulsky would have been con-

fronted with clearly duplicative litigation" because "the issue of Skulsky's liability for legal expense under the Guaranties was already before the court in Illinois."

■■ ■ We conclude that the doctrine of *res judicata* precludes the Bank from recovering in Illinois the fees and costs incurred in the Colorado action, a conclusion fully consistent with the principles followed by our courts. "A decree operates as *res judicata* of the claim presented in a later action when the facts and relief sought in both actions 'are substantially the same.'" *Housing Authority*, 101 Ill. 2d at 254, quoting *Midlinsky v. Rubin* (1930), 341 Ill. 378, 385.

> "To determine whether causes of action are the same for *res judicata* purposes, two tests have been employed. [Citation.] The first is a 'same evidence' test, under which the court inquires whether the same facts are essential to the maintenance of both cases or whether the evidence needed to sustain the second action would have sustained the first. [Citations.] Where the same factual allegations form the basis for the two allegedly different causes of action, the fact that a party proceeds on different theories or seeks different relief does not prevent the operation of *res judicata*. [Citation.] ***
>
> * * *
>
> [More recently,] Illinois courts[, as well as those of many other States,] have also used a 'transactional' approach to determine whether causes of action are identical for *res judicata* purposes, stating that 'the assertion of different kinds or theories of relief still constitutes a single cause of action if a single group of operative facts give [*sic*] rise to the assertion of relief.' [Citations.]" *Best Coin-Op, Inc. v. Paul F. Ilg Supply Co.* (1989), 189 Ill. App. 3d 638, 652, 654.

■ Whether the "same evidence" test or the "transactional" approach is applied, we hold that under the facts of this case the doctrine of *res judicata* governs as to the Colorado litigation, for both the Illinois and Colorado cases arose out of the underlying contractual relationship between the parties; the complaints in both alleged that Steiner defaulted on his obligations, both alleged that upon notice to Skulsky he failed to abide by the terms of his guaranties; the Bank pleaded its attorney fees and costs in both complaints; and Skulsky's defenses were the same in both cases. As the Bank concedes, "the issues litigated in Colorado were exactly the same as those raised by Skulsky in the trial court here." The trial judge recognized as much in her statement: "The Colorado case and in this case, it seems to be involved with the same issues." Therefore,

since the facts, pleadings, issues, applicable law, and the relief sought in both cases were nearly identical, *res judicata* applies.

The Bank's thesis that the purpose of the Colorado action was to enforce the pledge agreement and not the guaranties is no acceptable answer to the issue of whether it could have petitioned for attorney fees at the conclusion of the Colorado case pursuant to the provisions of the pledge agreement and in accordance with the prayer of its complaint; under the principles applicable to *res judicata*, we fail to perceive any valid reason why the Bank could not have pursued the issue there. Skulsky went guarantor on Steiner's notes and at the same time he pledged the TCI notes as collateral on his guaranties. Both his guaranties and the pledge contained provisions regarding attorney fees and costs in the event the Bank had to resort to enforcement of any of his commitments. This was not a series of unrelated or disconnected events; there was no fire wall between them; they formed a unitary transaction among the parties, demonstrating quite clearly that there would have been no loan to Steiner without Skulsky's subscribing concomitantly to all of the security devices the Bank required of him. Moreover, there is much to be said for the requirement that the parties litigate these cognate matters where the services are rendered and the expenses incurred, and where the courts and the resident lawyers and expert witnesses are thoroughly familiar with the type, quality, and quantity of the services performed in the case and the reasonableness of the charges therefor. Furthermore, if the Bank had pursued attorney fees in the Colorado action there, the result could not have led to any duplication of effort because of the certainty that Illinois would not have reheard the case:

> "An Illinois court will not rehear a case on the merits because under principles of *res judicata* the nature and amount of the judgment, together with all defenses which could have been raised, are foreclosed. Full faith and credit demands this approach. A collateral attack upon a foreign judgment may not be made except for the defenses of fraud in its procurement (extrinsic fraud) or lack of jurisdiction in the foreign court. [Citations.]" (*Dawson v. Duncan* (1986), 144 Ill. App. 3d 532, 537.)

(Accord *Raper v. Hazelett & Erdal* (1983), 114 Ill. App. 3d 649, 654.) Accordingly, we hold that the circuit court erred in not applying the doctrine of *res judicata* to the issue of whether the Bank was entitled to recover the attorney fees and court costs it incurred in the Colorado action.

■ Skulsky argues as to the Illinois action that "the circuit court abused its discretion in awarding the Bank attorney fees incurred prior to December 20, 1985 for the reason that the Bank, in fact, incurred no legal expense prior to that date, [Victor] Sayyeh [having] voluntarily assumed

the role of paying all attorney fees and costs on behalf of the Bank." Although the record supports Skulsky's contention that Sayyeh paid the fees, there is nothing in this case that corroborates his assertion that the Bank never incurred them. One incurs expenses when one becomes liable for them (see *Hall v. County of Cook* (1935), 359 Ill. 528, 545-46; *Greenspan v. Travelers Insurance Co.* (1979), 98 Misc. 2d 43, ___, 412 N.Y.S.2d 1009, 1011), and whether Sayyeh paid the Bank's fees after it incurred them is irrelevant to whether it incurred them in the first place. Nor does Skulsky furnish any authority for the proposition that Sayyeh's paying the Bank's fees inures to his benefit.

■ Skulsky also contends that certain attorney fees that the trial court awarded to the Bank were not detailed enough on its counsel's bills to enable one to determine if they were reasonable. Although Skulsky's brief contains a table summarizing the expenses the Bank incurred, he does not refer to any part of the record to support his claim, and we have no obligation to search the record for him, which in this case happens to be quite voluminous. (*Harvey v. Carponelli* (1983), 117 Ill. App. 3d 448, 451.) Further, although Skulsky asserts that he "was never given the opportunity to depose each attorney who submitted billing statements to determine the nature of each of the figures, despite [his] requests," he has cited nothing in the record which would indicate that he sought to compel the taking of any such depositions, nor does the record contain any orders adverse to him on this point. Consequently, we sustain the circuit court's award of fees to the Bank as to the Illinois phase of this case.

THE FLORIDA AND NEW JERSEY CLAIMS

The Bank's Florida and New Jersey actions sought costs and fees, as provided in the guaranties, "paid [by the Bank] to collect the indebtedness *** or in enforcing this guaranty." We cannot agree, therefore, with Skulsky's contention that this "language of the provision authorizing the Bank to recover attorney fees and costs is not specific enough and cannot be reasonably construed to require Skulsky to pay the Bank's fees and costs."

■ Skulsky contends that "[t]he Bank is estopped by principles of *res judicata* and collateral estoppel from seeking fees it requested or should have requested at the conclusion of both the New Jersey and Florida actions," citing *In re Marriage of Firestone* (1987), 158 Ill. App. 3d 887. However, *Firestone* clearly upholds the universal rule that *res judicata* applies only after there has been "a *final judgment on the merits* rendered by a court of competent jurisdiction *** on matters found to be part of the same cause of action before the same or a different tribunal. [Citation.]" (Emphasis added.) 158 Ill. App. 3d at 891. See also *Towns v.*

*Yellow Cab Co.* (1978), 73 Ill. 2d 113, citing *People v. Kidd* (1947), 398 Ill. 405.

 As noted above, the Florida and New Jersey suits were filed to domesticate the 1985 judgment of the Illinois circuit court, but when this court reversed that judgment, there was patently nothing before the foreign tribunals to act upon; accordingly, those actions were properly withdrawn. Upon dismissal of its New Jersey action, the Bank was granted leave to refile, which would indicate that the dismissal was without prejudice and also that it did not result in a termination on the merits. Skulsky does not dispute the Bank's assertion that it "terminated" the Florida proceeding, which would indicate that this, too, was a voluntary dismissal and not an adjudication on the merits. Nor does Skulsky suggest the existence of any New Jersey or Florida statutes or rules of court which would show that the voluntary dismissal of a suit operates as an adjudication on the merits. On the contrary, there appears to be a well-established and well-defined general tradition that voluntary dismissals do not preclude a second action. (See, *e.g., United States v. One Clipper Bow Ketch Nisku* (1st Cir. 1977), 548 F.2d 8, 10 n. 2; *Markham v. Anderson* (E.D. Mich. 1979), 465 F. Supp. 541, 543 (withdrawal of a prior petition for habeas corpus did not preclude a later petition, in light of the general rule "that neither *res judicata* nor collateral estoppel is \*\*\* applicable to a voluntary dismissal") (emphasis added).) We therefore hold the doctrine of *res judicata* to be inapplicable to either the New Jersey or Florida aspects of this case.

 Finally, we are obliged to conclude that Skulsky has waived the issue of collateral estoppel as to the Florida and New Jersey cases inasmuch as he fails to explain its applicability to this case, and fails as well to cite any authority in support of his contention. (134 Ill. 2d 341(e)(7).) However, even if we were to consider the issue, we would still be constrained to hold, on the authority of that line of cases exemplified by *Markham*, that collateral estoppel is not applicable to a voluntary dismissal. We hold, therefore, that the circuit court erred in ruling that the Bank was not entitled to its fees and costs related to the Florida and New Jersey actions.

For the foregoing reasons, the judgment of the circuit court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

DiVITO and McCORMICK, JJ., concur.