WILBURT PURITT *et al.*, Plaintiffs-Appellants, v. ALLSTATE INSURANCE COMPANY, Defendant-Appellee.

First District (1st Division)   No. 1—95—2678

Opinion filed October 15, 1996.

Robert A. Holstein, Aron D. Robinson, and Claudette M. Winstead II, all of Holstein, Mack & Klein, of Chicago, for appellants.

Steven M. Levy, of Sonnenschein, Nath & Rosenthal, of Chicago, for appellee.

JUSTICE WOLFSON delivered the opinion of the court:
This case concerns an insured's claim against his insurance

company for medical payments benefits. It is more than a dispute about amounts. The insured, Wilburt Puritt (Puritt), contends Allstate Insurance Company (Allstate) has a regular policy and practice of underpaying the medical bills incurred by its insureds.

Puritt filed suit against Allstate. In it, he sought individual and class action relief. Dr. Kirsten Knudsen, assignee of the rights of five other Allstate insureds, also is a named plaintiff in these breach of contract and declaratory judgment claims against Allstate. Allstate filed motions to dismiss the complaint, contending the plaintiffs lacked standing to bring their lawsuit and that this is not a proper class action. The trial judge granted Allstate's motions. We reverse and remand for further proceedings.

BACKGROUND

The contract provision that underlies this action is the automobile medical payments section in the insurance policy Allstate issued to Puritt and the five assignors. It provides:

> "Allstate will pay to or on behalf of an insured person all reasonable expenses actually incurred for necessary medical treatment, medical services or medical products actually provided to the insured person."

Later, in the medical payments section, under the heading of "Unreasonable or Unnecessary Medical Expenses," the policy provides:

> "If the insured person incurs medical expenses which are unreasonable or unnecessary, we may refuse to pay for those medical expenses and contest them. Unreasonable medical expenses are fees for medical services which are substantially higher than the usual and customary charges for those services. Unnecessary medical expenses are fees for medical services which are not usually and customarily performed for treatment of the injury, including fees for an excessive number, amount or duration of medical services."

And then:

> "If the insured person is sued by a medical services provider because we refuse to pay contested medical expenses, we will pay all defense costs and any resulting judgment against the insured person."

The policy is silent on what happens to health provider claims that do not become lawsuits.

After Puritt's complaint was dismissed with leave to amend, he and Dr. Knudson filed the "First Amended Class Action Complaint for Declaratory Relief and Damages" that is the subject of this appeal.

The amended complaint alleged that Puritt was a person covered by an Allstate insurance policy, that he had been injured in an automobile accident, that he had received medical treatment and agreed to pay for the services rendered, that he had submitted the medical claims to Allstate, and that the claims were not paid in full based on Allstate's determination that the charges were unreasonable. He also alleged he paid his medical provider the balance of the charges not paid by Allstate.

Dr. Knudsen was identified in the complaint as a doctor of chiropractic medicine who treated five patients covered by Allstate policies. She alleged each of these patients had been involved in an automobile accident, had submitted claims to Allstate under medical payments provisions of the policy for treatment rendered by her, and had received only partial payment of the bills. Dr. Knudsen's allegation that assignments from her patients placed her in their shoes for purposes of this lawsuit went unchallenged.

Both Puritt and Dr. Knudsen alleged, as individuals and on behalf of a purported class believed to be in excess of 5,000 members, that Allstate's refusal to pay the full amount of the bills was unreasonable and represented breaches of the insurance contract. The core allegation is that Allstate has a policy and practice of rejecting all or part of legitimate medical claims by using a payment schedule that is unreasonably low and arbitrarily set, without regard to the "usual and customary" fees actually charged by similar medical care providers within the applicable geographic region.

Allstate brought motions seeking dismissal under sections 2—606, 2—615, and 2—619 of the Civil Practice Law (735 ILCS 5/2—606, 2—615, 2—619 (West 1992)). The trial judge dismissed the individual and class actions with prejudice.

When dismissing Puritt's individual action, the trial judge went beyond the face of the pleadings to consider an affidavit submitted by Allstate. We assume that dismissal was under section 2—619. See *Janes v. Albergo*, 254 Ill. App. 3d 951, 626 N.E.2d 1127 (1993). Dismissal of Dr. Knudsen and the class appears to be based on section 2—615, since the trial judge found the plaintiffs' pleadings failed to establish standing and precluded a class action as a matter of law. See *Evers v. Edward Hospital Ass'n*, 247 Ill. App. 3d 717, 617 N.E.2d 1211 (1993).

Either way, we review the trial judge's orders *de novo*. See *Sherman v. Kraft General Foods, Inc.*, 272 Ill. App. 3d 833, 651 N.E.2d 708 (1995); *Crespo v. Weber Stephen Products Co.*, 275 Ill. App. 3d 638, 656 N.E.2d 154 (1995).

DECISION

1. Standing of the individual plaintiffs.

Allstate contends, and the trial judge apparently agreed, that Puritt lacked standing for two reasons. First, because he "manufactured" standing by paying his medical bills in full; second, because he did not and could not suffer any injury.

■ While we agree that a litigant cannot manufacture standing via "subsequent events" (*CSM Insurance Building, Ltd. v. Ansvar America Insurance Co.*, 272 Ill. App. 3d 319, 323-24, 649 N.E.2d 600 (1995)), we find nothing like that happened here. Puritt paid his bills seven days before his first complaint was filed. The fact that he did not allege payment in his original complaint, but did in his first amended complaint, is of no consequence.

Allstate contends the only way Puritt could establish he was injured is by refusing to pay the bill, wait for a claim against him by the medical provider, then rely on Allstate to defend and indemnify him. Puritt does not have to wait for a lawsuit against him, says Allstate, despite the policy language that keeps the insurance company on the sidelines until its insured "is sued by a medical services provider."

As proof that the policy means more than it says, Allstate filed an affidavit of its claims manager, John Valaitis:

"Pursuant to the terms of the aforementioned policy, if Allstate disputes the validity of a medical care charge, and therefore does not pay the entire amount of that charge, Allstate will defend and indemnify these injured persons *if they are sued by the medical care providers which have not been fully paid*, and Allstate will take all due steps to ensure that no credit problems result to the insured persons from such a dispute." (Emphasis added.)

Allstate contends the Valaitis affidavit means its insureds get all the protection they ever will need. We do not share Allstate's sanguine view of the affidavit. Valaitis speaks in terms of what will happen if the insured is sued. It is hard to tell whether the promise to "take all due steps to ensure that no credit problems result" applies to nonlawsuit situations, but even if it does, it is not much of a promise.

Allstate apparently envisions standing aside while doctors or their collection agencies press the patient for payment of bills. That approach threatens irreparable injury to the doctor-patient relationship. It also invites the filing of lawsuits in an already congested court system.

Allstate's policy, with its reference to "any resulting judgment

against the insured person," recognizes that an insured may be held personally liable for unpaid medical expenses. We have held that "[o]ne incurs expenses when one becomes liable for them." *American National Bank & Trust Co. v. Steiner*, 235 Ill. App. 3d 1101, 1107, 603 N.E.2d 8 (1991).

If, as the plaintiffs contend, Allstate as a matter of policy and practice makes arbitrary and unreasonable determinations concerning the fees medical providers should charge, enough of an injury is established to defeat the motions to dismiss.

■ Generally, to have standing a person must show that he has sustained, or is in imminent danger of sustaining, an injury. The injury, however, does not have to be economic. *Waterfront Estates Development, Inc. v. City of Palos Hills*, 232 Ill. App. 3d 367, 371, 597 N.E.2d 641 (1992). See *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 262-63, 50 L. Ed. 2d 450, 462-63, 97 S. Ct. 555, 562 (1977) (real estate developer's assertion of right to be free of arbitrary zoning actions is sufficient injury).

■ Puritt and Dr. Knudsen, through the five assignments, possess a contractual right to reimbursement for their legitimate and reasonable medical expenses. They allege Allstate's systematic, arbitrary determination of "unreasonable or unnecessary" medical expenses places them in imminent danger of suffering economic loss. The allegations, taken as true for purposes of the motions to dismiss, establish an actual controversy and a claim or right capable of being affected. That is enough at this stage of the proceedings. See *Monroe v. U.S. Fidelity & Guaranty Co.*, 237 Ill. App. 3d 261, 603 N.E.2d 855 (1992).

The insureds did not have to wait until lawsuits against them were filed or collection agents began harassing them or their credit files were red-flagged. There is standing. We therefore reverse the trial court's order dismissing the individual claims for lack of standing and remand for further proceedings.

2. The class action.

Relying on two Illinois decisions, the trial judge agreed with Allstate that a class action could not be maintained. The cases are *Kostur v. Indiana Insurance Co.*, 192 Ill. App. 3d 859, 549 N.E.2d 685 (1989), and *Blake v. State Farm Mutual Automobile Insurance Co.*, 168 Ill. App. 3d 918, 523 N.E.2d 85 (1988).

The facts in *Kostur* and *Blake* are similar. In *Kostur*, the plaintiffs alleged that the defendant insurance company's failure to automatically include or offer underinsured motorist coverage violated Illinois law. In *Blake*, the plaintiffs alleged State Farm failed

to offer increased uninsured and underinsured motorist coverage when it offered other automobile insurance and that the company's "acknowledgment/rejection form" was inadequate.

In both cases the courts held the plaintiffs had no standing to bring a class action. The requirement of a common question of law or fact was not met. There was no commonality among class members.

Blake's allegations stemmed from his individual negotiations with State Farm's agent. In addition, Blake suffered no injury until he was involved in an accident with an uninsured motorist. The accident, then, was an intervening factor. Without it, injury for class members would be speculative.

In *Kostur*, one reason for affirming the dismissal was that injury to class members was speculative without the intervening factor of an automobile accident.

We do not read *Kostur* and *Blake* as meaning no class action can be maintained where the insurer's liability arises from an automobile accident.

■ The distinction between those cases and this case lies in the definition of the purported class. In *Blake* the proposed class included all "new business" policyholders. In *Kostur* the proposed class consisted of persons issued new or renewed policies in which the amount of underinsured motorist coverage was less than the amount required by law. No harm would befall those plaintiffs unless they were injured in an auto accident. That may never have happened to some of them. The accident was an intervening factor, the possible harm speculative.

The class is defined differently in this case. It consists of Allstate's insureds (or health care providers taking an assignment of benefits from an insured) who had been involved in an auto accident, were injured, received medical treatment for which they submitted claims under the medical payments provisions of their policies, and were tendered less than the amounts billed based on Allstate's alleged "policy and practice" of depriving its insureds of reasonable payments on their medical claims.

The auto accident is not an intervening factor in this case. It is an essential part of the class description. No one can be a member of the purported class unless he or she has been injured in an auto accident. *Kostur* and *Blake* do not apply.

It could be said at this stage of the proceedings that some of the purported claims would require separate adjudication. But, where a predominant and common question of law or fact exists, requirement of individual proofs, or multiple claims requiring separate adjudication, do not bar class actions. *Barliant v. Follett Corp.*, 74 Ill. 2d 226,

234-35, 384 N.E.2d 316 (1978). The basic criterion for maintaining a class action is a community of interest in the subject matter of the suit and in the remedy. *Newberry Library v. Board of Education*, 387 Ill. 85, 95, 55 N.E.2d 147 (1944). See also *Arca v. Colonial Bank & Trust Co.*, 265 Ill. App. 3d 498, 637 N.E.2d 687 (1994).

This case is more like *Van Vactor v. Blue Cross Ass'n*, 50 Ill. App. 3d 709, 365 N.E.2d 638 (1977). There, the claim was that Blue Cross was violating its contract with its insureds by denying benefits solely on the ground that it disagreed with the honest judgment of the treating doctor on the need for medical services. Upholding the class action, we said that the common issue of contract interpretation was "dominant and pervasive." *Van Vactor*, 50 Ill. App. 3d at 721.

It is too early to say whether a class action is appropriate in this case. We merely hold the trial judge should not have let *Kostur* and *Blake* deter him from considering whether a class action would be a proper way to proceed. We, therefore, vacate the order dismissing the class action count and remand this cause for further proceedings pursuant to the statute governing class actions (735 ILCS 5/2—801 *et seq.* (West 1992)).

## CONCLUSION

The trial court's order dismissing the individual and class action claims is reversed and this cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

BUCKLEY and BRADEN, JJ., concur.