796 So.2d 555 (2001)
Dino KAKLAMANOS and Keely Kaklamanos, Petitioners,
v.
ALLSTATE INSURANCE COMPANY, Respondent.
No. 1D00-2974.
District Court of Appeal of Florida, First District.
July 26, 2001.
Rehearing Denied October 5, 2001.
*556 David Lee Sellers, Pensacola, for Petitioners.
Yancey F. Langston of Moore, Hill & Westmoreland, P.A., Pensacola, for Respondent.
Katherine E. Giddings of Katz, Kutter, Haigler, Alderman, Bryant & Yon, P.A., Tallahassee, for Amicus Curiae, American Insurance Association.
BENTON, J.
At issue is whether an insured whose medical bills Allstate Insurance Company (Allstate) declines to pay can sue Allstate for personal injury protection (PIP) and automobile medical payments (medpay) benefits, without first paying the medical provider, if the medical provider has not yet brought suit against the insured. Dino Kaklamanos and Keely Kaklamanos, petitioners here, were plaintiffs in county court. Their complaint proceeded on the theory that Allstate's failure to pay a medical bill they had forwarded (or caused to be forwarded) to Allstate breached the PIP and medpay provisions of their motor vehicle insurance policy. On appeal from Escambia County Court, the Circuit Court, First Circuit, affirmed the final judgment a county judge entered in favor of Allstate after granting Allstate's motion for summary judgment. We quash the circuit court's judgment.

I.
The complaint the Kaklamanoses filed in county court on April 6, 1999, alleged that a medical provider, Nu Best Diagnostics (NBD), had performed medically reasonable treatment or testing on Keely Kaklamanos on January 27, 1999; that an automobile accident in which Ms. Kaklamanos had been injured on or about February 17, 1998, made the treatment or testing necessary; and that NBD's bill had been sent to Allstate, the Kaklamanoses' motor vehicle insurer; but that, despite the Kaklamanoses' compliance "with all statutory requirements precedent to ... entitlement to benefits," Allstate had refused to pay the bill, even in part.
Allstate disputed the allegation that the automobile accident made the services for which NBD billed reasonably medically necessary, but did not dispute other salient facts. The parties agreed that an automobile accident had occurred and that Allstate's policy was in effect at the time. The Kaklamanoses admitted that they had not paid NBD's bill and that NBD had not filed suit against them for nonpayment. Allstate admitted that it had been duly notified of the circumstances allegedly surrounding the injuries "by means of the `No Fault' application-for-benefits claim form."
Conceding that NBD's bill remained unpaid only because Allstate disputed its reasonable medical necessity in relation to the accident, Allstate moved for summary judgment on the basis of the following policy provision:
If an insured person incurs medical expenses which [Allstate] deem[s] to be unreasonable or unnecessary, [Allstate] may refuse to pay for those medical expenses and contest them.
If the insured person is sued by a medical services provider because [Allstate] refuse[s] to pay medical expenses *557 which [Allstate] deem[s] to be unreasonable or unnecessary, [Allstate] will pay resulting defense costs and any resulting judgment against the insured person. [Allstate] will choose the counsel. The insured person must cooperate with [Allstate] in the defense of any claim or lawsuit. If [Allstate] ask[s] an insured person to attend hearings or trials, [Allstate] will pay up to $50.00 per day for loss of wages or salary. [Allstate] will also pay other reasonable expenses incurred at [its] request.
On grounds that Ms. Kaklamanos had "eschewed the indemnification and defense provisions of her policy with" Allstate, the county court granted Allstate's motion for summary judgment, ruling that there were "no damages to pursue in this action nor can any result in the future," and entered summary judgment in favor of Allstate accordingly. On appeal, the circuit court affirmed.

II.
Initially, we must decide whether the certiorari petition the Kaklamanoses have addressed to the circuit court's decision falls within the limited "scope of common law certiorari jurisdiction." Ivey v. Allstate Ins. Co., 774 So.2d 679, 682 (Fla. 2000). Only if "the circuit court's decision constituted a denial of procedural due process, application of incorrect law, or a miscarriage of justice," Ivey, 774 So.2d at 683, do we properly decide the question their petition presents.
Certiorari is a common-law writ which issues in the sound judicial discretion of the court to an inferior court, not to take the place of an appeal, but to cause the entire record of the inferior court to be brought up in order that it may be determined from the face thereof whether the inferior court has exceeded its jurisdiction, or has not proceeded according to the essential requirements of law. Confined to its legitimate scope, the writ may issue within the court's discretion to correct the procedure of courts wherein they have not observed those requirements of the law which are deemed to be essential to the administration of justice.... Failure to observe the essential requirements of law means failure to accord due process of law within the contemplation of the Constitution, or the commission of an error so fundamental in character as to fatally infect the judgment and render it void....
It seems to be the settled law of this state that the duty of a court to apply to admitted facts a correct principle of law is such a fundamental and essential element of the judicial process that a litigant cannot be said to have had the remedy by due course of law, guaranteed [by the Florida Constitution], if the judge fails or refuses to perform that duty.
State v. Smith, 118 So.2d 792, 795 (Fla. 1st DCA 1960) (footnotes omitted) (quoted with approval in Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 527 (Fla.1995)). Examination of the record, including the briefs filed in circuit court, persuades us that the circuit court applied[1] the incorrect law in the present case. We reach and decide the merits of the petition because the court's purely legal error was *558 "sufficiently egregious or fundamental." Haines City Cmty. Dev., 658 So.2d at 531. See, e.g., Rader v. Allstate Ins. Co., 789 So.2d 1045, D1431 (Fla. 4th DCA 2001); Progressive Express Ins. Co. v. MTM Diagnostics, Inc., 754 So.2d 150, 152 (Fla. 2d DCA 2000); Globe Life & Accident Ins. Co. v. Preferred Risk Mut. Ins. Co., 539 So.2d 1192, 1193 (Fla. 1st DCA 1989).

III.
The policy language on which Allstate relies does not in terms purport to place any restrictions on an insured's right to sue, if PIP or medpay benefits are not paid in a timely fashion. Allstate cannot legally, moreover, diminish[2] the extent of its PIP and medpay undertakings by adding or amending policy provisions. See generally Young v. Progressive Southeastern Ins. Co., 753 So.2d 80 (Fla.2000) (holding uninsured motorist policies must conform[3] to statutory requirements). Section 627.736(4), Florida Statutes (1997) makes PIP and medpay benefits "due and payable as loss accrues, upon receipt of reasonable proof of such loss and the amount of expenses and loss incurred which are covered by the policy."
As the Ivey court recently explained, "the purpose of the nofault statutory scheme is to `provide swift and virtually automatic payment so that the injured insured may get on with his life without undue financial interruption.' Government Employees Ins. Co. v. Gonzalez, 512 So.2d 269, 271 (Fla. 3d DCA 1987)(citing Comeau v. Safeco Ins. Co., 356 So.2d 790 (Fla. 1978))." Ivey, 774 So.2d at 683-84. See § 627.736(4)(b), Fla. Stat. (1997) ("Personal injury protection insurance benefits paid pursuant to this section shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same."). We have previously held:
[T]he statutory language is clear and unambiguous. The insurance company has thirty days in which to verify the claim after receipt of an application for benefits. There is no provision in the statute to toll this time limitation. The burden is clearly upon the insurer to authenticate the claim within the statutory time period. To rule otherwise would render the recently enacted "nofault" insurance statute a "no-pay" plana result we are sure was not intended by the legislature.
Dunmore v. Interstate Fire Ins. Co., 301 So.2d 502, 502 (Fla. 1st DCA 1974). See also § 627.736(4)(f), Fla. Stat. (1997)("Medical payments insurance, if available in a policy of motor vehicle insurance, shall pay the portion of any claim for personal injury protection medical benefits which is otherwise covered but is not payable due to the coinsurance provision of paragraph (1)(a), regardless of whether the full amount of personal injury protection *559 coverage has been exhausted."); see generally Nationwide Mut. Fire Ins. Co. v. Pinnacle Med., 753 So.2d 55, 59 (Fla. 2000)("An objective of Florida's Motor Vehicle No Fault Law was to provide persons injured in an accident with prompt payment of benefits.").
An insured's claim for PIP or medpay benefits "is a first party claim in contract for failure to pay the contractual obligation for personal injuries sustained, regardless of fault." Levy v. Travelers Ins. Co., 580 So.2d 190, 191 (Fla. 4th DCA 1991). Here petitioners adequately alleged that they sustained damages as a result of Allstate's failing to pay NBD's bill for thirty days.[4]See State Farm Mut. Auto. Ins. Co. v. Lee, 678 So.2d 818, 821 (Fla.1996) (holding that, once thirty days elapsed after receipt of the Lees' PIP claim, "and no benefits were paid on the claim, assuming they were properly due,[5] State Farm had effectively breached their contract with [the Lees].").
While "payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment," § 627.736(4)(b), Fla. Stat. (1997), we agree with the Third District "that the legislature provided no [other] exceptions to the thirty-day period, and that courts will not countenance insurers' attempts to create their own means of tolling that period." Fortune Ins. Co. v. Pacheco, 695 So.2d 394, 395-96 (Fla. 3d DCA 1997).

IV.
The present case should be distinguished from Rader v. Allstate Ins. Co., 789 So.2d 1045 (Fla. 4th DCA 2001), where the Fourth District recently held that the absence of any unpaid medical bills defeated the insured's standing to allege an anticipatory breach.[6] The majority opinion quoted the circuit court's decision, which explained:

*560 The Court below did not err in dismissing the Amended Complaint, which alleged an anticipatory breach of contract. Although the insurer's letter stating that it would not pay for further medical treatment may be an anticipatory breach of contract, such breach only relieves the Plaintiff from the condition precedent of submitting her claims to the Appellee 30 days prior to filing suit. Peachtree Casualty Ins. Co. v. Walden, 759 So.2d 7 (Fla. 5th DCA 2000).
The alleged anticipatory breach did not relieve the Plaintiff of the necessity of incurring and alleging damages in order to state a cause of action for breach of contract. Miller v. Nifakos, 655 So.2d 192 (Fla. 4th DCA 1995); Plowden & Roberts, Inc. v. Conway, 192 So.2d 528 (Fla. 4th DCA 1966). The Plaintiff failed to allege that she sustained any damages as a result of the Defendant's alleged breach. Further, a plaintiff cannot obtain a judgment for insurance benefits which have not as yet accrued. Aetna Life Ins. Co. v. Smith, 345 So.2d 784 (Fla. 4th DCA 1977); Cruz v. Union Gen. Ins., 586 So.2d 91 (Fla. 3d DCA 1991); Monsanto Co. v. Fuqua, 280 So.2d 496 (Fla. 1st DCA 1973); Walden. Since the Plaintiff did not incur any medical expenses which the Defendant did not reimburse, and any damages the Plaintiff might have sustained as a result of the alleged anticipatory breach are too speculative to sustain an action for breach of contract, this Court declines the opportunity to affirm the dismissal but remand with instructions to allow the Plaintiff to amend her complaint. Augusting v. Southern Bell Tel. & Tel. Co., 91 So.2d 320 (Fla.1956) distinguishing Byers v. Southern Bell Tel. & Tel. Co., 73 So.2d 875 (Fla.1954)(dismissal appropriate where on the face of the complaint damages are too speculative to be recoverable).
The Court understands the Appellant's frustration at the inability to obtain relief for the insurer's alleged anticipatory breach. However, if she had incurred reasonable, necessary, and related medical expenses after the insurer's letter, she would have had a cause of action against the Appellee for those claims without submitting them to the insurer and waiting 30 days.
Rader, 789 So.2d at 1046-47. Judge Gunther's dissenting opinion argued that the insured had standing to assert an anticipatory breach even in the absence of unpaid medical bills. See id. at 1047 (Gunther, J., dissenting). Nothing in either Rader opinion offers any support for the view that an insured cannot sue for PIP or medpay benefits thirty days after properly presenting a medical bill that the insurer refuses to pay.

V.
An insured who incurs reasonable and necessary medical expenses on account of an automobile accident sustains losses and incurs liability for PIP and medpay purposes, whether or not the medical bills have been paid. An insured, who is under no legal obligation to assign benefits to providers, may not, indeed, be able to pay such bills without first receiving PIP or medpay benefits. The recipient of such bills is entitled to sue a defaulting insurer for PIP and medpay benefits. An *561 insured may be damaged by an insurance company's failure to pay a claim even if the insured has not already paid or been sued by the medical provider.
Allstate's argument in the present case blurs important distinctions between contracts of indemnity requiring reimbursement of moneys actually paid and liability insurance contracts like the Allstate policy at issue here:
The distinction between contracts of indemnity against liability and contracts of indemnity against loss has caused a good deal of confusion. The former may be defined as an undertaking of the indemnitor to stand in the place of the indemnitee in the performance of some act, as in the payment of a debt due to a third person. The right of action springs into existence with the accrual of liability and the failure to discharge it. The contract of indemnity against loss is an undertaking to repay or reimburse the indemnitee or to make good the actual loss which he may suffer. The indemnitee, therefore, cannot recover on the covenant until he has paid or otherwise satisfied the obligation.
Gaines v. MacArthur, 254 So.2d 8, 10 (Fla. 3d DCA 1971) (quoting Case Comment, 24 Calif. L.Rev. 193 (1936)). A right of action arises thirty days after notice to Allstate that reasonable and necessary medical treatment against which it has insured has resulted in a debt.

VI.
We quash the circuit court's decision because it applies a fundamentally incorrect rule of law.[7] The Florida Motor Vehicle No Fault Law makes Allstate an "indemnitor against liability" for reasonable and necessary medical expenses incurred by persons the PIP or medpay provisions cover. "An expense is the same as a debt, and it has been incurred when liability for payment attaches." Reliance Mut. Life Ins. Co. v. Booher, 166 So.2d 222, 224 (Fla. 2d DCA 1964).
Accordingly, we grant the petition for writ of certiorari, and quash the decision under review, with directions that the circuit court reverse the county court's summary judgment and remand to county court for further proceedings consistent with this opinion.
BOOTH and KAHN, JJ., CONCUR.
NOTES
[1] "The certiorari jurisdiction of district courts of appeal may be sought to review ... final orders of circuit courts acting in their review capacity." Fla. R.App. P. 9.030(b)(2). The circuit court's per curiam affirmance in the present case is such an order. "County court litigants ... are not precluded from seeking review in the district court of appeal when the circuit court affirms without opinion, nor are they limited by Article V [of the Florida Constitution]." Rich v. Fisher, 655 So.2d 1149, 1150 (Fla. 4th DCA 1995).
[2] Amicus curiae argues that the policy language on which Allstate relies "is fully consistent with the no-fault law," and affords insureds more, not less, protection "by establishing an insurer's contractual obligation to pay all costs of defending claims and any resulting judgments."
[3] "Any insurance policy ... otherwise valid which contains any condition or provision not in compliance with the requirements of this code shall ... be construed and applied in accordance with such conditions and provisions as would have applied had such policy... been in full compliance with this code." § 627.418(1), Fla. Stat. (1997). See State Farm Mut. Auto. Ins. Co. v. Swearingen, 590 So.2d 506, 507 (Fla. 4th DCA 1991); see also § 627.412(2), Fla. Stat. (1997) ("No policy shall contain any provision inconsistent with or contradictory to any standard or uniform provision used or required to be used, but the department may approve any substitute provision which is, in its opinion, not less favorable in any particular to the insured or beneficiary than the provisions otherwise required."); Travelers Indem. Co. v. Suazo, 614 So.2d 1071 (Fla.1992).
[4] The complaint alleged generally compliance with all statutory conditions precedent. Considering the same question presented here, another judge of the Escambia County Court reached the opposite conclusion and held, in denying Allstate's motion for summary judgment in a different case:

In addition to the inevitable effects on the doctor/patient relationship, Allstate's argument that plaintiff will sustain no damages as a result of wrongful non-payment fails because the indemnification provision ignores the harmful consequences to an insured's credit history and financial future caused by the mere filing of a credit driven law suit. Even if Allstate pays any judgment obtained by the medical care provider, the insured's credit history will reflect the untimely payment and subsequent judgment.
Jones v. Allstate Ins. Co., 7 Fla. L. Weekly Supp. 541, 542 (Fla. Escambia Cty. Ct. Mar. 26, 2000). The circuit court's per curiam affirmance has not resolved the question even within the First Circuit. See Dep't of Legal Affairs v. Dist. Court of Appeal, 434 So.2d 310, 311 (Fla.1983).
[5] We have recently held that the lapse of thirty days does not cut off an insurer's right to defend on grounds that medical bills are unreasonable or unnecessary. See State Farm Mut. Auto. Ins. Co. v. Jones, 789 So.2d 504 (Fla. 1st DCA 2001). See alsoGurney v. State Farm Mut. Auto. Ins. Co., 795 So.2d 1118 (Fla. 5th DCA 2001); AIU Ins. Co. v. Daidone, 760 So.2d 1110, 1112-13 (Fla. 4th DCA), review pending, SC00-1547 (Fla. July 24, 2000); Jones v. State Farm Mut. Auto. Ins. Co., 694 So.2d 165, 166 (Fla. 5th DCA 1997). But see Perez v. State Farm Fire and Cas. Co., 746 So.2d 1123, 1125-26 (Fla. 3d DCA 1999), review granted sub nom, United Auto. Ins. Co. v. Rodriguez, 767 So.2d 464 (Fla.2000).
[6] Also distinguishable from the present case are two out-of-state decisions on which Allstate relies: Ny v. Metro. Prop. & Cas. Ins. Co., 1998 Mass.App. Div. 179 (1998), 1998 WL 603138 (upholding summary judgment against insureds where insurance company had paid bills in part and obtained releases from the providers for the balances) and McGill v. Auto. Ass'n, 207 Mich.App. 402, 526 N.W.2d 12, 13, 14 (1994) (affirming summary disposition where insurers had "paid to plaintiffs' health care providers amounts that they considered reasonable" and the insurance commissioner had directed no-fault insurers to provide claimants with "complete protection from economic loss" including any exposure to "harassment, dunning, disparagement of credit, or lawsuit as a result of a dispute between the health care provider and the insurer").
[7] But, because we do not construe Allstate's policy as impeding access to the courts, or as otherwise inconsistent with the Florida Motor Vehicle No Fault Law, we need not, and therefore do not, reach the Kaklamanoses' contention that the policy fails to conform to the requirements of sections 627.730-7405, Florida Statutes (1997), or of article I, section 21 of the Florida Constitution. See generally Nationwide Mut. Fire Ins. Co. v. Pinnacle Med., 753 So.2d 55, 59 (Fla.2000) (holding that section 627.736(5), Florida Statutes (1995), "denies medical providers access to courts" and "arbitrarily distinguishes between medical providers and insureds").