843 So.2d 885 (2003)
ALLSTATE INSURANCE COMPANY, Petitioner,
v.
Keely KAKLAMANOS, Respondent.
Veron Caravakis, Petitioner,
v.
Allstate Indemnity Company, Respondent.
Nos. SC01-2444, SC02-198.
Supreme Court of Florida.
April 3, 2003.
*887 Yancey F. Langston and Charles F. Beall, Jr. of Moore, Hill & Westmoreland, P.A., Pensacola, FL, and Peter J. Valeta of Ross & Hardies, Chicago, IL, on behalf of Allstate Insurance Company; and Tony Griffith and Timothy M. Ingram of Tanney Eno, Tanney, Griffith & Ingram, P.A., Clearwater, FL, on behalf of Veron Caravakis, Petitioners.
David Lee Sellers, Pensacola, FL, on behalf of Keely Kaklamanos; and Anthony J. Parrino of Reynolds & Stowell, P.A., and Peter J. Valeta of Ross & Hardies, Chicago, IL, on behalf of Allstate Indemnity Company, Respondents.
David B. Shelton and Candy L. Messersmith of Rumberger, Kirk & Caldwell, Orlando, FL, for National Association of Independent Insurers, Amicus Curiae.
Julie H. Littky-Rubin of Lytal, Reiter, Clark, Fountain & Williams, LLP, West Palm Beach, FL, for the Academy of Florida Trial Lawyers, Amicus Curiae.
QUINCE, J.
We have for review Kaklamanos v. Allstate Insurance Co., 796 So.2d 555 (Fla. 1st DCA 2001), and Caravakis v. Allstate Indemnity Co., 806 So.2d 548 (Fla. 2d DCA 2001), which expressly and directly conflict with each other on the issue of whether certiorari review by the district court of appeal was proper. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons expressed below, we approve the decision by the First District Court of Appeal in Kaklamanos and quash the decision by the Second District Court of Appeal in Caravakis.
Both of these cases involve the ability of an insured party to maintain an action against the insurer for nonpayment of personal injury protection (PIP) automotive insurance benefits when the insured has not paid the medical bills in question and the medical provider has not instituted legal action against the insured for nonpayment. The factual circumstances of the cases are very similar. Both cases involve individuals who filed complaints in county court against their insurance company after the company refused to pay PIP benefits for the medical services on the basis that the treatments were not medically necessary or reasonable.[1] In *888 both cases, the insurance company moved for summary judgment, asserting that the insureds had not suffered any damages because they had not paid the medical bills and had not been sued for payment by the medical provider. A provision in the insurance contracts provided that the insurance company would defend and indemnify the insureds should the medical provider sue for payment. In each case, the county courts granted the insurance company's motion for summary judgment and entered final judgment in favor of the insurance company. On appeal, the circuit courts affirmed the final judgments. The insureds then sought certiorari review in the district court of appeal. In Kaklamanos the First District found certiorari review to be proper; the Second District reached the opposite conclusion in Caravakis. The insureds then sought review by this Court on the basis of the conflicting decisions on whether certiorari review was proper under the factual circumstances presented. For purposes of clarity, we describe the factual circumstances of each case below.

FACTUAL AND PROCEDURAL BACKGROUND
Keely Kaklamanos sought medical treatment from Nu-Best Diagnostics for injuries she sustained in an automobile accident that occurred approximately one year earlier. Kaklamanos's insurance company, Allstate Insurance Company (Allstate), refused to pay for the medical services on the basis that the treatment was not medically necessary. Kaklamanos then filed a complaint against Allstate in Escambia County Court on the theory that failure to pay a medical bill that Kaklamanos had forwarded to Allstate breached the PIP and medpay provisions of her motor vehicle insurance policy.
Allstate filed a motion for summary judgment, asserting that Kaklamanos had not suffered any damages because she had not paid the medical bill and had not been sued for payment by Nu-Best Diagnostics. A provision in Kaklamanos's insurance contract with Allstate provided for indemnification should the medical provider sue the insured for payment. The county court granted Allstate's motion for summary judgment, ruling that there were "no damages to pursue in this action nor can any result in the future" and entered final judgment in favor of Allstate. On appeal, the First Judicial Circuit Court affirmed the final judgment.
Kaklamanos then sought certiorari review by the First District Court of Appeal. The district court first concluded that certiorari jurisdiction could be properly exercised because "[e]xamination of the record, including the briefs filed in circuit court, persuades us that the circuit court applied the incorrect law in the present case. We reach and decide the merits of the petition because the court's purely legal error was `sufficiently egregious or fundamental.'" Kaklamanos, 796 So.2d at 557-58 (footnote omitted) (quoting Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 531 (Fla.1995)). The district court then addressed the merits of the petition and quashed the circuit court's order, holding that the complaint sufficiently alleged damages and that Kaklamanos *889 could sue Allstate for benefits without paying the medical bills herself or being sued by the medical provider. See id. at 561.
Veron Caravakis sought medical care from an orthopedic surgeon for injuries he sustained in a motor vehicle accident. The bills from that physician were submitted to Caravakis's automobile insurer, Allstate Indemnity Company (Allstate). Caravakis filed a complaint against Allstate in Pinellas County Court, alleging that Allstate failed to pay PIP payments that were due. Allstate had paid some of Caravakis's medical expenses, but only the amount it deemed reasonable and necessary. The policy provided that Allstate may refuse to pay for medical expenses that it deemed to be "unreasonable or unnecessary" but would defend and indemnify Caravakis if he was sued by a medical provider for the amount Allstate refused to pay. The county court granted summary judgment in favor of Allstate. On appeal, the Sixth Judicial Circuit Court affirmed, concluding that Caravakis suffered no damages until sued by a medical provider.
Caravakis then sought certiorari review by the Second District Court of Appeal. The district court denied Caravakis's petition, finding that his argument presented "a matter of statutory interpretation unsuitable for the limited standard of review in a certiorari proceeding." Caravakis, 806 So.2d at 550. The Second District concluded that there are no appellate cases repudiating the policy endorsement at issue and thus "the circuit court cannot be said to have violated a clearly established principle of law." Id. at 549-50.
With this factual background, we first address the conflict issue of whether certiorari review was proper under the factual circumstances presented.

CERTIORARI REVIEW
The nature and scope of certiorari review in Florida has been refined over the years. As this Court recently explained, certiorari review is "appellate in character in the sense that it involves a limited review of the proceedings of an inferior jurisdiction." Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 525 (Fla. 1995). However, certiorari should not be used to grant a second appeal, but instead is limited to those instances where the lower court did not afford procedural due process or departed from the essential requirements of law. See id. at 526.
As explained in Ivey v. Allstate Insurance Co., 774 So.2d 679, 682 (Fla. 2000), the departure from the essential requirements of the law necessary for the issuance of a writ of certiorari is something more than a simple legal error. A district court should exercise its discretion to grant certiorari review only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice. See id.; Heggs, 658 So.2d at 528.
Ivey involved the standard that the district courts must follow in determining whether to grant certiorari review of a circuit court's appellate decision. This Court reiterated the standard from Heggs (whether the circuit court afforded procedural due process and applied the correct law) and Combs v. State, 436 So.2d 93, 95 (Fla.1983) (explaining that district courts should exercise certiorari discretion only when there has been a violation of clearly established principles of law resulting in a miscarriage of justice). We concluded that the Third District Court of Appeal inappropriately exercised certiorari review in Ivey where the district court merely disagreed with the circuit court's interpretation of the applicable PIP law. The Third District found "an erroneous interpretation *890 of [PIP] law to be important enough for certiorari" based on "the pervasiveness of automobiles and PIP coverage in this state." Allstate Ins. Co. v. Ivey, 728 So.2d 282, 283 n. 2. (Fla. 3d DCA 1999) (emphasis added). Thus, the Ivey court explicitly stated that it based its certiorari review on disagreement with the result of the circuit court sitting in its appellate capacity. As this Court noted in its review of Ivey, the district court's decision "did not even purport to consider why the circuit court's decision constituted a denial of procedural due process, application of incorrect law, or a miscarriage of justice, as required by this Court's precedents." Ivey, 774 So.2d at 683.
In the instant cases, the two district courts applied the proper standard of certiorari review as outlined in Ivey and Heggs, yet reached opposite conclusions regarding the appropriateness of certiorari jurisdiction to review the circuit courts' appellate decisions holding that an insured has no standing to bring a breach of contract action against an insurer based on the refusal to pay medical expenses if the insured has incurred no out-of-pocket expenses, the medical provider has not brought a collection action against the insured, and the policy contains a defend and indemnify provision should such action ensue. In Caravakis, the Second District denied the petition for certiorari, finding that the circuit court had afforded procedural due process and applied the correct law in its appellate review. See Caravakis, 806 So.2d at 549. The Second District noted that there were no appellate cases repudiating the policy endorsement at issue and thus Caravakis could not meet the threshold requirements for certiorari relief. See id. at 550. In Kaklamanos, the First District applied the same certiorari standard, but concluded that the circuit court had applied the incorrect law and that it was sufficiently egregious or fundamental to require certiorari review. See Kaklamanos, 796 So.2d at 557-558.
After reviewing a number of cases involving certiorari review, we conclude that the Second District has too narrowly interpreted what constitutes "clearly established law" for purposes of certiorari review. See, e.g., Rader v. Allstate Ins. Co., 789 So.2d 1045 (Fla. 4th DCA 2001), review dismissed, 816 So.2d 128 (Fla. 2001); Progressive Express Ins. Co. v. MTM Diagnostics, Inc., 754 So.2d 150 (Fla. 2d DCA 2000); Globe Life & Accident Ins. Co. v. Preferred Risk Mut. Ins. Co., 539 So.2d 1192 (Fla. 1st DCA 1989). These cases illustrate that "clearly established law" can derive from a variety of legal sources, including recent controlling case law, rules of court, statutes, and constitutional law. Thus, in addition to case law dealing with the same issue of law, an interpretation or application of a statute, a procedural rule, or a constitutional provision may be the basis for granting certiorari review.
In Kaklamanos, the First District concluded that the circuit court's appellate decision was in conflict with the PIP statute, which provides that PIP benefits are due and payable as the loss accrues and such benefits are overdue if not paid within thirty days after written notification of the covered loss. The district court also concluded that the circuit court's decision conflicted with a number of cases interpreting this thirty-day pay requirement. See Kaklamanos, 796 So.2d at 558-61. The First District was "persuade[d]" that "the circuit court applied the incorrect law" and that this legal error was "sufficiently egregious or fundamental" to fall within the limited scope of the district court's certiorari jurisdiction. Id. at 557-58.
*891 As explained more fully below, we agree with the First District that the lower courts' interpretation of damages is too narrow and is inconsistent with both the intent and language of the PIP statute and the general principles governing contracts. Thus, we find that the First District properly exercised its certiorari jurisdiction to address the merits of Kaklamanos's petition. Conversely, we conclude that the Second District should have granted certiorari review in Caravakis.[2]

FLORIDA'S NO-FAULT INSURANCE LAW
We turn now to the merits of the underlying issue, namely whether an insured has standing to bring a breach of contract action against an insurer where the insurer refuses to pay medical expenses but the insured has incurred no out-of-pocket expenses, the medical provider has not brought a collection action against the insured, and the policy contains a defend and indemnify provision should such action ensue. We begin our discussion by examining the background and general principles of Florida's no-fault insurance law.
The Florida Motor Vehicle No-Fault Law, sections 627.730-.7405, Florida Statutes (2001), which was enacted in 1971, was intended to provide a minimum level of insurance benefits without regard to fault. See § 627.731, Fla. Stat. (2001); United Auto. Ins. Co. v. Rodriguez, 808 So.2d 82, 85 (Fla.2001). Under this statutory scheme, each driver collects certain statutorily required medical, disability, or death benefits regardless of fault. See Mansfield v. Rivero, 620 So.2d 987, 988 (Fla.1993). As this Court has explained, the general policy underlying the no-fault insurance law includes
a lessening of the congestion of the court system, a reduction in concomitant delays in court calendars, a reduction of automobile insurance premiums and an assurance that persons injured in vehicular accidents would receive some economic aid in meeting medical expenses and the like, in order not to drive them into dire financial circumstances with the possibility of swelling the public relief rolls.
Lasky v. State Farm Ins. Co., 296 So.2d 9, 16 (Fla.1974).
The statutory provision at issue in the instant case is section 627.736(4), which describes when personal injury protection (PIP) benefits are due and the method by which notice must be given. The intent of this provision is to promote the prompt resolution of PIP claims. See Rodriguez, 808 So.2d at 86. Under section 627.736(4), PIP benefits "shall be due and payable as loss accrues, upon receipt of reasonable proof of such loss and the amount of expenses and loss incurred which are covered by the policy." An insured may seek the payment of benefits for a covered loss by submitting "reasonable proof of such loss to the insurer; if the benefits are not paid within thirty days and the insurer does not have reasonable proof that it is not responsible for the payment, the payment is "overdue." See § 627.736(4)(b), Fla. Stat. (2001); Rodriguez, 808 So.2d at 86. However, even where written notice is furnished to the insurer as provided by the statute, a payment is not deemed overdue "when the insurer has reasonable proof to establish that the insurer is not responsible *892 for the payment." § 627.736(4)(b), Fla. Stat. (2001). Moreover, the insurer is not barred from contesting the claim just because a payment becomes overdue. See Rodriguez, 808 So.2d at 86; AIU Ins. Co. v. Daidone, 760 So.2d 1110, 1111 (Fla. 4th DCA 2000). If the insurer is ultimately found liable for a contested claim, then the statutory penalties of interest and attorney's fees would be applicable. See § 627.736(4)(c), (8), Fla. Stat. (2001); Rodriguez, 808 So.2d at 89 (Pariente, J., concurring).
Allstate argues that an insured does not have standing to bring an action for PIP benefits if he or she has not paid the unpaid medical expenses or the medical provider has not instituted a collection action against the insured. The county and circuit courts agreed with Allstate's argument and granted summary judgment in Allstate's favor in each case. In Kaklamanos, the county court concluded that there were "no damages to pursue in this action nor can any result in the future," and the circuit court affirmed this judgment. 796 So.2d at 557. These courts concluded that the defend and indemnify provision in the insurance policy precluded any possible damages to the insured for unpaid medical expenses. See id. In Caravakis, the circuit court affirmed the county court's summary judgment because "Caravakis suffered no damages until sued by a medical provider." 806 So.2d at 549.
This Court has not specifically addressed the effect of such a defend and indemnify provision in an automobile insurance policy. However, we have noted that an insured's cause of action against the PIP insurer "is a first party claim in contract for failure to pay the contractual obligation for personal injuries sustained, regardless of fault." State Farm Mut. Auto. Ins. Co. v. Lee, 678 So.2d 818, 820 (Fla.1996) (emphasis added) (concluding that the statute of limitations runs from time the insurer denies the PIP claim because this is the date that the contract is breached) (quoting Levy v. Travelers Ins. Co., 580 So.2d 190, 191 (Fla. 4th DCA 1991)). The Second District has similarly explained that actions for PIP benefits "are to be governed by the general principles of contract law." Donovan v. State Farm Fire & Cas. Co., 574 So.2d 285, 286 (Fla. 2d DCA 1991) (finding that statute of limitations began to run when insurer declined to make further payments after initially accepting a PIP claim, making payments thereon for three years, and then refusing further benefits).
While these discussions were in the context of the statute of limitations, it is clear that actions for PIP benefits are based on the insurance contract and thus are governed by contract principles. As the Second District explained in Donovan, "[w]hen parties are voluntarily acting pursuant to a contract, there is no cause of action upon that contract until a breach occurs. In regard to insurance contracts, a specific refusal to pay a claim is the breach which triggers the cause of action...." Id. (citation omitted). The county and circuit courts in the instant cases erred by evaluating the insureds' actions for PIP benefits in terms of damages, rather than looking at the actions in terms of a breach of contract.
As the First District explained in Kaklamanos, an insured is under no obligation to assign PIP benefits to his or her medical providers[3] and may not be able to *893 pay such bills without first receiving PIP or medpay benefits. 796 So.2d at 560. Thus, "[a]n insured may be damaged by an insurance company's failure to pay a claim even if the insured has not already paid or been sued by the medical provider," and should be entitled to sue a defaulting insurer for PIP and medpay benefits. Id. at 561; see also Burgess v. Allstate Indem. Co., 823 So.2d 130, 132 (Fla. 2d DCA 2002) (concluding that "an insured's right of action against the PIP and medpay insurer arises thirty days after written notice to the insurer that reasonable and necessary medical treatment covered by the insurance has resulted in a debt").
Moreover, the county and circuit courts in the instant cases looked only at economic losses in assessing the insureds' damages. In the context of PIP benefits, we note that an insured can suffer noneconomic injuries even before he or she pays a medical bill or faces a collection action by a medical provider. For example, in denying Allstate's motion for summary judgment on the same grounds in a different case, an Escambia County Court judge noted that the indemnification provision "effectively drives a wedge between the medical care provider and the patient by forcing them into adversarial positions," "imposes additional expense and delay in payment of contested medical benefits by requiring the medical provider to file suit against the insured," and "ignores the harmful consequences to an insured's credit history and financial future caused by the mere filing of a credit driven law suit." Jones v. Allstate Ins. Co., 7 Fla. L. Weekly Supp. 541, 542 (Fla. Escambia Cty. Ct. Mar. 26, 2000); see also Andrews v. Allstate Ins. Co., 7 Fla. L. Weekly Supp. 613 (Fla. Escambia Cty. Ct. June 21, 2000) (finding that insurer's promised defense was not unqualified and that insured's responsibility for attorney's fees in a law suit with the medical provider where PIP coverage was exceeded was a sufficient injury for standing purposes); Decker v. Allstate Prop. Cas. Ins. Co., 7 Fla. L. Weekly Supp. 145 (Fla. Broward Cty. Ct. Oct. 22, 1999) (finding that PIP payments are first-party benefits and insured need not be sued by medical provider prior to filing suit against insurer).
In addressing a similar argument that the insured lacked standing to bring an action against the insurer based on a similar defend and indemnify provision, an Illinois appellate court also noted that such an approach "threatens irreparable injury to the doctor-patient relationship" and "invites the filing of lawsuits in an already congested court system." Puritt v. Allstate Ins. Co., 284 Ill.App.3d 442, 219 Ill. Dec. 845, 672 N.E.2d 353, 355-56 (1996). Thus, the Illinois court concluded that insureds need not "wait until lawsuits against them were filed [by medical providers] or collection agents began harassing them or their credit files were red-flagged" to have standing. Id. at 356.
Other jurisdictions have also concluded that an insured "incurs" medical expenses for purposes of PIP benefits when he or she accepts medical treatment. See, e.g., Dutta v. State Farm Ins. Co., 363 Md. 540, 769 A.2d 948, 961 (2001) (holding that insured incurred medical expenses when he was admitted to the hospital, received medical treatment, and signed an agreement to pay expenses and that granting of PIP benefits was both appropriate and *894 mandatory); Shanafelt v. Allstate Ins. Co., 217 Mich.App. 625, 552 N.W.2d 671, 676 (1996) (concluding that insured incurs expenses when medical treatment is accepted and thus medical bills are allowable expenses under no-fault insurance, even though a health insurer actually pays the bills).
Allstate cites a number of cases from other jurisdictions in support of its lack-of-standing argument. Most of the cases cited are distinguishable from the instant cases. For example, in Huntt v. State Farm Mutual Automobile Insurance Co., 72 Md.App. 189, 527 A.2d 1333 (1987), the court affirmed the dismissal of the insured's action because the insured refused to comply with the condition precedent of submitting to an independent medical examination by the insurer's physician. In Ostrof v. State Farm Mutual Auto. Insurance Co., 200 F.R.D. 521 (D.Md.2001), the district court did not dismiss the case for lack of standing. Instead, the court denied the insureds' motion for class certification because they did not meet the class requirements of numerosity, commonality, typicality, and adequacy of representation. In Ny v. Metropolitan Property & Casualty Insurance Co., 1998 Mass.App. Div. 179, 1998 WL 603138 (Mass.Dist.Ct.1998), aff'd, 51 Mass.App.Ct. 471, 746 N.E.2d 578 (2001), a Massachusetts appellate court concluded that summary judgment was proper because the insured was not an "unpaid party" under the Massachusetts statute because the insurer had obtained releases from the medical providers agreeing to accept as full payment what the providers had already received from the insurer. Finally, in Kinnard v. Allstate Insurance Co., No. 992-00812 (Mo.Cir.Ct. Nov. 15, 1999), a Missouri circuit court dismissed a breach of contract claim against Allstate because the plaintiff failed to state facts indicating how his submission of damages and Allstate's refusal to pay the claim in full gave rise to the plaintiff's alleged damages of thirteen dollars. While the Missouri court order mentions that there was no allegation that the plaintiff incurred any out-of-pocket expenses or had paid the bill in full, it does not specifically state that these were the determining factors in the court's dismissal. See id., slip op. at 5. Instead, the court states that "[t]he mere conclusion that [the plaintiff] had damages of $13.00 does not show how that sum relates in anyway to Allstate's alleged actions." Id., slip op. at 6. Thus, had the plaintiff more clearly stated the connection between the refusal to pay and his alleged damages, the claim might not have been dismissed for failure to state a claim.
While Michigan courts have dismissed actions by insureds for lack of injury, Michigan law provides that defend and indemnify provisions must protect the insured from a variety of noneconomic injuries. The Michigan Commissioner of Insurance has issued a directive requiring all auto insurers to "act at all times to assure that the insured or claimant is not exposed to harassment, dunning, disparagement of credit, or lawsuit as a result of a dispute between the health care provider and the insurer." McGill v. Automobile Ass'n of Michigan, 207 Mich.App. 402, 526 N.W.2d 12, 14 (1994) (emphasis added). Thus, Michigan law already provides protection from the type of injuries noted by the Florida courts in Kaklamanos, Burgess, and Jones.
It appears that Texas is the only jurisdiction where a court has clearly held that an insured lacks standing to bring a breach of contract action against the insurer under the circumstances presented here. See Gloria v. Allstate County Mut. Ins. Co., No. SA-99-CA-676-PM (W.D. Tex. Sept. 29, 2000) (finding that alleged injuries are too speculative to be the basis *895 of an injury in fact for purposes of federal standing requirement); Noah v. Government Employees Ins. Co., No. SA-00-CA-018 (W.D.Tex. Apr. 9, 2001) (same). However, those cases involved federal claims relating to insurance policies. The federal court determined that the plaintiffs could not meet the federal standing requirements for their federal claims and thus dismissed the actions. In one of the cases, the district court specifically dismissed the state claims without prejudice to the plaintiff to refile them in state court. See Gloria, slip op. at 26.
As this Court explained in Department of Revenue v. Kuhnlein, 646 So.2d 717, 720 (Fla.1994), the doctrine of standing does not exist in Florida "in the rigid sense employed in the federal system." In Kuhnlein, the State argued that various plaintiffs lacked standing to challenge the constitutionality of an automobile impact fee because the plaintiffs either had not paid the fee or had not requested a refund of any fee paid. This Court explained that "[u]nlike the federal courts, Florida's circuit courts are tribunals of plenary jurisdiction" and "have authority over any matter not expressly denied them by the constitution or applicable statutes." Id. Consequently, we concluded that there was no "requirement that the plaintiff must pay the fee or request a refund" in order to have standing under Florida law. Id. Thus, the Texas federal standing cases cited by Allstate are not applicable to the instant cases.
Finally, Allstate argues that the First District has improperly interpreted the insurance policy as an indemnification against liability and that it is actually an indemnification against loss. Further, Allstate contends that even if the policy is interpreted as indemnifying against loss, Kaklamanos cannot meet the injury requirement for standing in light of the defend and indemnify provision contained in the insurance policy. Kaklamanos and Caravakis contend that it would violate both Florida's no-fault law and public policy to interpret the indemnify and defend provision in the manner Allstate urges.
The contract provision at issue in both cases provides:
Unreasonable or Unnecessary Medical Expenses
If an insured person incurs medical expenses which we deem to be unreasonable or unnecessary, we may refuse to pay for those medical expenses and contest them.
If the insured person is sued by a medical services provider because we refuse to pay medical expenses which we deem to be unreasonable or unnecessary, we will pay resulting defense costs and any resulting judgment against the insured person. We will choose the counsel. The insured person must cooperate with us in the defense of any claim or lawsuit. If we ask an insured person to attend hearings or trials, we will pay up to $50.00 per day for loss of wages or salary. We will also pay other reasonable expenses incurred at our request.
The lower courts interpreted this provision as limiting the insured's right to bring a cause of action against the insurer. The First District found no such limitation in the provision and concluded that Allstate's argument "blurs important distinctions between contracts of indemnity requiring reimbursement of moneys actually paid and liability contracts like the Allstate policy at issue here." Kaklamanos, 796 So.2d at 561. The First District reasoned that Kaklamanos's right of action under the contract arose with Kaklamanos's accrual of liability for medical treatment and Allstate's failure to discharge the debt thirty days after notice. See id. In Burgess, the Second District agreed that Allstate's automobile *896 insurance contract is a contract of indemnity against liability and thus accrual of liability and the failure to discharge it creates a cause of action for the insured under the contract. See Burgess, 823 So.2d at 132.
The policy provision at issue in the instant cases provides that Allstate may refuse to pay medical expenses that it deems to be unreasonable or unnecessary and contest those expenses. It further provides that if the insured is sued by the medical provider for those expenses, Allstate will pay the insured's defense costs and any resulting judgment against the insured. Thus, Allstate agrees to indemnify and defend the insured under these circumstances. We agree with the district courts in Kaklamanos and Burgess that the policy should be interpreted as a contract of indemnity against liability, not as an indemnity against loss.
Indeed, the plain language of the policy provision does not restrict the insured's right to sue if PIP benefits are not paid, nor does the provision contain a requirement of payment by the insured. See Classic Concepts, Inc. v. Poland, 570 So.2d 311, 312 (Fla. 4th DCA 1990) (concluding that indemnification provision in an insurance contract covering the transportation of merchandise was an indemnity against loss based on language of provision indemnifying "only to the amount which [insured] are obligated to pay and do pay on such merchandise by reason of losses caused"). As interpreted by the county and circuit courts in the instant cases, this provision means that an insured has suffered no injury if he or she has not already paid a claim that the insurer denied or has not been sued by the medical provider for the unpaid services and thus has no standing to bring a claim against the insurer. The lower courts in Kaklamanos went even further, ruling that no damages were possible in the future based on the defend and indemnify provision in the policy. See Kaklamanos, 796 So.2d at 557.
Moreover, even if the county and circuit courts' interpretation was supported by the plain language of the policy provision, such a provision would be inconsistent with the purposes of the PIP statute and would have to be construed and applied to be in full compliance with the code. See § 627.418(1), Fla. Stat. (2001) ("Any insurance policy, rider, or endorsement otherwise valid which contains any condition or provision not in compliance with the requirements of this code shall not be thereby rendered invalid, ... but shall be construed and applied in accordance with such conditions and provisions as would have applied had such policy, rider, or endorsement been in full compliance with this code."); see also State Farm Mut. Auto. Ins. Co. v. Swearingen, 590 So.2d 506, 507 (Fla. 4th DCA 1991) (finding that the policy's three-year limitation on med pay coverage was invalid because in conflict with the statute). Cf. Young v. Progressive Southeastern Ins. Co., 753 So.2d 80, 83 (Fla.2000) (holding that provisions in uninsured motorist policies which provide less coverage than required by the statute are void as contrary to public policy).
Under the interpretation of the defend and indemnify provision advocated by Allstate, an insurer could avoid payment of PIP benefits for medical expenses in many instances by simply contesting the expenses. Under Allstate's interpretation of the provision, the insured would lack standing to question the insurer's determination that the medical expense was unreasonable and unnecessary unless the insured paid the medical bill or was sued by the medical provider. However, it may be economically prohibitive for many insureds to pay their medical bills out of their own *897 pockets. Further, this is inconsistent with the intent of no-fault insurance, namely to "provide swift and virtually automatic payment so that the injured insured may get on with his life without undue financial interruption." Ivey v. Allstate Ins. Co., 774 So.2d at 683-84. Additionally, medical providers may be loath to pursue patients for expenses which the insurance company refuses to pay, and such actions against a patient could harm the doctor-patient relationship. Thus, what should be a determination for the trier of factwhether a medical expense is reasonable and necessarywould be determined as a matter of law through the insurance company's motion for summary judgment based on the insured's lack of standing. The insurance company could effectively prevail on its contest of a claim, while the person who has paid for the contract of insurance would not be able to even challenge the contested claim. Under this interpretation, there would be no incentive for the insurer to promptly pay claims as there would be no risk of a legal action by the insured. The insurer's risk of legal action would only arise after the medical provider has sued the insured or the insured has assigned benefits to the medical provider. Cf. Crooks v. State Farm Mut. Auto. Ins. Co., 659 So.2d 1266, 1268 (Fla. 3d DCA 1995) (finding insurer only paid bills that unquestionably qualified for benefits under the policy after the insured initiated underlying suit over three months after the insurer had been properly notified of the claims).

CONCLUSION
For all the reasons discussed above, we agree with the First District Court of Appeal that certiorari review was proper under the circumstances of this case and that "[a]n insured who incurs reasonable and necessary medical expenses on account of an automobile accident sustains losses and incurs liability for PIP and medpay benefits, whether or not the medical bills have been paid." Kaklamanos, 796 So.2d at 560. Further, the recipient of such bills is entitled to sue the defaulting insurer for PIP and medpay benefits when the benefits have not been "paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same." § 627.736(4)(b), Fla. Stat. (2001). Accordingly, we approve the decision of the First District Court of Appeal in Kaklamanos and quash the decision of the Second District Court of Appeal in Caravakis, to the extent that it is inconsistent with this opinion.
It is so ordered.
ANSTEAD, C.J., PARIENTE and LEWIS, JJ., and SHAW, Senior Justice, concur.
WELLS, J., dissents with an opinion.
CANTERO, J., recused.
WELLS, J., dissenting.
I dissent because there is simply no way I can reconcile the approval of the First District's certiorari jurisdiction in Kaklamanos v. Allstate Insurance Co., 796 So.2d 555 (Fla. 1st DCA 2001), with this Court's majority decision quashing certiorari jurisdiction by the Third District in Ivey v. Allstate Insurance Co., 774 So.2d 679 (Fla. 2000). In this case, the majority holds:
Thus, in addition to case law dealing with the same issue of law, an interpretation or application of a statute, a procedural rule, or a constitutional provision may be the basis for granting certiorari review.
Majority op. at 890. In Ivey, this Court stated the opposite:
In this case, it is clear that the Third District merely disagreed with the circuit *898 court's interpretation of the applicable law, which, as explained in [Haines City Community Development v. Heggs, 658 So.2d 523 (Fla.1995) ], is an improper basis for common law certiorari.
774 So.2d at 683.
I recognize that in its opinion, the First District did say, "We reach and decide the merits of the petition because the court's purely legal error was `sufficiently egregious or fundamental.'" Kaklamanos, 796 So.2d at 557-58. However, neither the First District nor this Court's decision has supplied any basis upon which it can be reasonably concluded that these cases are anything more than garden-variety statutory and contract interpretations. Clearly, the mere recitation of the words "egregious or fundamental" should be insufficient; otherwise, certiorari review becomes standardless and subject to the particular views of different appellate court panels as to which decisions meet an amorphous criterion.
I conclude that the Second District, in Caravakis v. Allstate Indemnity Co., 806 So.2d 548 (Fla. 2d DCA 2001), did follow this Court's precedent and is indisputably logical in stating, "When established law provides no controlling precedent, the circuit court cannot be said to have violated a clearly established principle of law." Id. at 549-50. That there is no established law on the controlling issue in this case is acknowledged as a fact by this Court's majority opinion. Majority op. at 892.
This Court should abide by its own admonition stated in Ivey:
If a problem is occurring in our current appellate system because a large number of circuit court decisions are unreported, then perhaps that issue should be addressed and resolved. The solution is not, however, a second level of appellate review when a district court simply disagrees with the decision of a circuit court sitting in its appellate capacity. The concept of certiorari review should have a recognized uniformity of application. Thus, we conclude that the district court below inappropriately exercised certiorari review.
774 So.2d at 683. Certiorari review by a district court plainly should not be on the basis of whether the district court agrees or disagrees with the circuit court's decision. Likewise, neither can this Court's analysis of certiorari review be on that basis.
NOTES
[1] In Kaklamanos, Keely Kaklamanos signed an authorization for Nu-Best Diagnostic Labs to recover personal injury protection/medical payment benefits on her behalf. The authorization "irrevocably" appointed Nu-Best as her special attorney-in-fact and agent and gave Nu-Best full power to bring an action against the insurance company to recover any unpaid PIP or medpay benefits and "to do any and all things in the name of the undersigned patient to recover any and all unpaid personal injury protection/medical payment benefits as a result of fees claimed by NU-BEST Diagnostic Labs." Based on this authority, Dr. Daniel Bontrager of Nu-Best retained an attorney to represent Nu-Best and patient Kaklamanos with a claim against Allstate for unpaid medical bills. The attorney filed a PIP action against Allstate for failure to pay Kaklamanos's medical bill for treatment by Nu-Best. The attorney informed Kaklamanos of this action by letter and subsequently informed Kaklamanos by letter of the progress of the case. Thus, even though Keely Kaklamanos is the named party to this action, she was not personally involved and was represented by her attorney in fact.
[2] The Second District recognized in Caravakis that it "might agree that the PIP statute is violated by a policy provision that requires an injured person to be sued by his medical provider before he can contest the reasonableness and necessity of medical expenses." 806 So.2d at 550. In fact, the court subsequently made such a ruling on the merits in Burgess v. Allstate Indemnity Co., 823 So.2d 130 (Fla. 2d DCA 2002).
[3] In fact, where an insured does assign PIP benefits to the medical provider, it has been ruled an unqualified assignment which removes the insured's standing to bring a direct action against the insurer, even though the insured remains liable for any medical bills not paid by the insurer. See, e.g., Oglesby v. State Farm Mut. Auto. Ins. Co., 781 So.2d 469 (Fla. 5th DCA 2001); Livingston v. State Farm Mut. Auto. Ins. Co., 774 So.2d 716, 717 (Fla. 2d DCA 2000) ("As a general rule, if an insured has assigned her right to receive personal injury protection (PIP) benefits to a health care provider, the insured may not file a lawsuit to collect the assigned benefits.").