LEWIS, J.,
dissenting.
This is a sad day for Florida citizens with a majority and concurring opinion that refuse to protect the right of compensation for the massive government taking of property from Florida citizens. The right to own private property and the corresponding right to receive full and complete compensation when private property is taken by a government is a foundational cornerstone of this democracy. This is and has been a guiding principle for not only Florida and American citizens for centuries but also the notion for free people even longer. The majority and concurring opinion today use artful and eloquent words and the phrase “without prejudice” to give an illusion of protecting a sacred constitutional right then to only crush that right by refusing to require payment of that compensation. The constitutional right *1003 to compensation is rendered hollow without payment of the compensation properly determined to be due and owing by the courts of this State.
In this case, certain citizens of Broward County and Lee County have battled for over ten years to receive payment of compensation due them under the Florida Constitution.. The Executive has done everything within his power do both defeat and delay the constitutional obligation, even forcing these litigants to file external petitions to enforce their judgments. Now the Legislature has finally. recognized Florida’s obligation and has appropriated the funds necessary to fulfill the requirement to pay compensation. Yet, the Chief Executive has now employed his veto poorer to prevent and delay this payment under a guise and misdirected premise of continuing litigation. However, the only litigation is litigation to compel payment itself. To suggest otherwise is disingenuous when the ongoing litigation is not at all directed to the merits or the amount due but rather to execution of duly entered and final judgments.
This is not a game and our citizens should not be toyed with as if a yo-yo, and yet that is exactly what this veto accomplishes. Now, with the opportunity to stop this ten-year game of yo-yo, this Court abdicates its responsibility when it allows state actors to disregard their constitutional obligation by playing further games of delay and obfuscation. Justice demands that it stop now.
In short, the majority and concurring opinion allow the Executive to rise above not only the Florida Constitution but also the United States Constitution through the exercise of a veto on the appropriated funds for payment of just compensation to property owners holding final judgments. We all recognize the existence of the Executive’s veto power and the strength of that power. However, no government shall have a long existence when it uses that power to strip fundamental constitutional rights and then a body with the obligation to ensure justice and to protect those rights refuses protection and delays relief contrary to the specific promises contained in the organic constitutional law.
To fully appreciate the severity of today’s decision, a brief review of the sacred, fundamental rights at issue becomes necessary. The principles of just compensation go back at least 800 years to Magna Carta-, which specifically protected agricultural crops from uncompensated takings. See Horne v. Dep’t of Agric., — U.S. -, 135 S.Ct. 2419, 2426, 192 L.Ed.2d 388 (2015). Following the Magna. Carta, the colonists did not leave behind the right to just compensation when they left to the New World, but rather adopted it once again in differing forms among the different colonies. See id. Ratified among the Bill of Rights, shouldered alongside the right to due process of law, the right to just compensation was' enshrined in our United States Constitution: “[N]or shall private property be taken for public use, without just compensation.” U.S. Const, amend. V. Eventually, this right was incorporated to the States through the due process clause of the Fourteenth Amendment.
. Notwithstanding the federal enshrinement of this sacred right, the Citizens of Florida were vigilant enough to adopt their own right to compensation dating back to the Constitution of 1838, in which it was declared
[t]hat private property shall not be taken or applied to.public use, unless just compensation be made therefor.
Art. I, § 12, Fla. Const. (1838). This precious right was readopted in the Florida Constitution of 1868: “[N]or shall private property be taken without just compensa *1004 tion.” Decl., of Rights, Fla. Const. (1868). Yet again the fundamental right was readopted in the Constitution of 1885:
No person shall be subject to be twice put in jeopardy for the same offense, nor compelled-in any criminal case to be .a witness against himself, nor be deprived of life, liberty or property without due process of law; nor shall private property be taken without just compensation.
Art. I, § 12, Fla. Const. (1885) (emphasis added). Finally, in the Constitution of 1968 the Citizens provided for an even more stringent right to compensation, that includes a focus. on. securing funds actually available to the owner:
No private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner.
Art. X, § 6(a), Fla. Const, (emphasis added).
Nevertheless, the majority and concurring opinion allow the Executive to tear those precious fundamental rights from the Constitution, not with arms but with incessant word games and semantics. The Executive specifically predicated this veto on what was specifically stated to be “ongoing litigation.” However, as aptly noted by the Petitioners, there is no litigation here but only efforts to collect on final judgments previously entered. The constitutional role of the judiciary in the fulfillment and satisfaction of this constitutional obligation should have come to a close upon the finality of that judgment. Likewise, the legislative branch has already upheld its- constitutional duty to make provision for the just compensation by appropriating the funds necessary to satisfy these judgments., Rather than follow the Florida and United States Constitutions and uphold the Executive’s role of the separation of powers that ultimately serves the constitutions, the executive power rewinds the yo-yo.for another go around. How many more rounds will be protected by this Court in future years?
■ In his efforts to forestall the constitutionally inevitable, the Executive further claims that there is no clear legal right for the Petitioners to obtain the- relief they seek. In my view, the Executive’s position is simply wrong. There can be. no clearer legal right than the plain text and words of our constitutions; both federal and state. We have specifically held that “clearly established law” includes constitutional law. Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885 (Fla. 2003) (“These cases illustrate that ‘clearly established law’ can derive from a variety of legal sources, including recent controlling case law, rules of court, statutes, and constitutional law.”) (emphasis added). We have begun down the road to an unfettered monarchy if we take away the right of payment of compensation for the government taking of property and render it illusory through incessant legal trifles. Indeed, the right to just compensation is among the few rights that separate our nation from the communist dictatorships of past. The difference in this great Nation is that the Government cannot seize property, even under the color of war, without paying just and full compensation. See, e.g., Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed. 1153 (1952).
The Executive’s response oozes executive power in what he terms his- unfettered veto.' However, the Executive forgets or has failed to read the first lines of the Florida Constitution: “All political power is inherent in the people. The enunciation herein of certain rights shall not be construed to deny or impair others retained by the people.” Art. I, § 1, Fla. Const. Here, the enunciation of the executive veto power should not be construed to deny or *1005 impair the fundamental constitutional right to full compensation and payment-for destroyed property retained by the people. Furthermore, as the Legislature and judges.below have performed, their duty to uphold the right to compensation at issue here, the Executive swore and affirmed that he would “support, protect, and defend the Constitution and Government of the United States and of . the State of Florida.” Art. II, § 5(b), Fla. Const. Likewise, one of the primary constitutional duties of the Executive is to “take care that the laws be faithfully executed.”. Art. IV, § 1(a), Fla. Const. There can be no law more paramount to be faithfully executed than the Constitution. It is in that context that the Executive’s veto power clearly must be limited, but this Court chooses to expand and increase that power above the clear Constitution itself.
Although entered after the veto at issue, in granting an alternative writ of mandamus directing the Chief Financial Officer to pay the judgments, the Twentieth Judicial Circuit has already recognized that the time for payment is now. We simply cannot allow another ten years to go by for the Executive to continue playing games of hide the money through a veto power and word games in the courts. Furthermore, every day that goes by, the State owes more and more in postjudgment interest for a judgment that has long been final.
Accordingly, I cannot stand with the majority or concurring-opinion as they allow the unnecessary obstruction of one of our fundamental rights—the right to just compensation when the government takes, or in this case destroys, private property. We are currently presented with a decade-long saga for the payment of just compensation, rendering the right hollow. The property owners in this matter are entitled to the prompt payment of the compensation that the lower courts of law have determined and the Legislature has recognized as due. Today this Court elevates the “veto power” above the clear mandates of both the Florida and United States Constitutions. I cannot' join this expansion and, thus, I dissent.