CANADY, Judge.
 

 State Farm Mutual Automobile Insurance Company seeks certiorari review of the circuit court’s decision affirming final summary judgments entered in county court personal injury protection (PIP) actions in favor of the respondent, which is a provider of chiropractic care. For the reasons expressed below, we grant the petition and quash the circuit court’s order.
 

 
 *1061
 
 I.
 
 Background
 

 In three separate county court cases, the respondent filed actions against State Farm for PIP benefits. In each of the cases, the respondent had provided treatment to State Farm’s insureds for injuries sustained in automobile accidents. The respondent submitted charges to State Farm for certain diagnostic tests, and State Farm denied payment for the tests on the basis that the tests were not reasonable or medically necessary. State Farm’s denials of payment were based on reviews of the insureds’ records by licensed chiropractors.
 

 The respondent filed motions for summary judgment in each of the cases, arguing that State Farm was precluded from defending against the respondent’s claims for PIP benefits because State Farm denied payment for diagnostic tests before obtaining a valid report under section 627.736(7)(a), Florida Statutes (2003), which requires a valid report based on a physical examination conducted by a similarly licensed physician before payment can be withdrawn. Concluding that the denials of payment in these three cases constitute withdrawals of payment as contemplated by section 627.736(7), the county court entered summary judgment against State Farm.
 

 State Farm appealed the orders of summary judgment to the circuit court, and the cases were consolidated on appeal. State Farm argued in the circuit court — as it had in the county court — that the denials of payment in the instant cases did not constitute withdrawals of payment under section 627.736(7). State Farm asserted that the denial of payment for a particular bill or service is governed by section 627.736(4)(b), which does not require a physical examination before payment is denied. The circuit court agreed with the county court that section 62?.736(7)(a) applies and that State Farm did not obtain valid reports before withdrawing payment to the provider.
 

 In its petition for writ of certiorari, State Farm argues that the circuit court’s opinion finds no support in section 627.736(7)(a). It claims that State Farm never withdrew payment to the provider or contested the authorization to continue treatment of the insureds and that, therefore, section 627.736(7)(a) was not implicated.
 

 II.
 
 Analysis
 

 A.
 
 Standard for Second-Tier Certiorari Review
 

 Second-tier certiorari review “is limited to those instances where the lower court did not afford procedural due process or departed from the essential requirements of law,” and it “should not be used to grant a second appeal.”
 
 Allstate Ins. Co. v. Kaklamanos,
 
 843 So.2d 885, 889 (Fla.2003).
 

 [ T]he departure from the essential requirements of the law necessary for the issuance of a writ of certiorari is something more than a simple legal error. A district court should exercise its discretion to grant certiorari review
 
 only
 
 when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.
 

 Id.
 
 “ ‘[Ajpplied the correct law’ is synonymous with ‘observing the essential requirements of law.’ ”
 
 Haines City Cmty. Dev. v. Heggs,
 
 658 So.2d 523, 530 (Fla.1995). “[I]n addition to case law dealing with the same issue of law, an interpretation or application of a statute, a procedural rule, or a constitutional provision may be the basis for granting certiorari review.”
 
 Kaklamanos,
 
 843 So.2d at 890.
 

 Second-tier certiorari relief has been afforded because a miscarriage of justice has resulted when a “circuit court’s [appellate]
 
 *1062
 
 decision establishes a rule of general application” for future cases in county court, “thus exacerbating the effect of the [circuit court’s] legal error.”
 
 Progressive Express Ins. Co. v. McGrath Cmty. Chiropractic,
 
 913 So.2d 1281, 1287 (Fla. 2d DCA 2005);
 
 see also Gould v. State,
 
 974 So.2d 441 (Fla. 2d DCA 2007);
 
 State Farm Fla. Ins. Co. v. Lorenzo,
 
 969 So.2d 393, 398 (Fla. 5th DCA 2007).
 

 B.
 
 The Appropriateness of State Farm’s Denials of Payment
 

 To determine whether State Farm is entitled to relief, we begin by examining the relationship between section 627.736(7)(a)’s specific restriction on “withdrawing] payment of a treating physician” and section 627.736(4)(b)’s general provisions regarding payment of PIP benefits. In examining this relationship, we consider one
 
 case
 
 —United
 
 Automobile Insurance Co. v. Viles,
 
 726 So.2d 320 (Fla. 3d DCA 1999)—which applied section 627.736(7)(a), and another
 
 case
 
 —Allstate
 
 Indemnity Co. v. Derius (Derius II),
 
 773 So.2d 1190 (Fla. 4th DCA 2000)—which declined to apply it.
 

 Section 627.736(7)(a) provides:
 

 Whenever the mental or physical condition of an injured person covered by personal injury protection is material to any claim that has been or may be made for past or future personal injury protection insurance benefits, such person shall, upon the request of an insurer, submit to mental or physical examination by a physician or physicians....
 
 An insurer may not withdraw payment of a treating physician without the consent of the injured person covered by the personal injury protection unless the insurer first obtains a valid report by a Florida physician licensed under the same chapter as the treating physician whose treatment authorization is sought to be withdrawn, stating that treatment was not reasonable, related, or necessary. A
 
 valid report is one that is prepared and signed by the physician examining the injured person or reviewing the treatment records of the injured person and is factually supported by the examination and treatment records if reviewed and that has not been modified by anyone other than the physician.
 

 (Emphasis added.) The issue in this case is whether this provision applies when the insurer seeks to deny a single payment for treatment.
 

 In
 
 Viles,
 
 726 So.2d at 320, the insured sought PIP benefits for injuries sustained in an accident, but the insurer defended on the ground that the chiropractic bills were fraudulent and not reasonably related to the accident. The insurer had paid a portion of the bills but denied payment on outstanding bills. The insured sought a directed verdict on the basis that the insurer must obtain a valid report under section 627.736(7)(a) before withdrawing payment. The county court granted the directed verdict in favor of the insured because the insurer “failed to obtain a physician[’]s report prior to denying payment.” Id. at 321. The county court certified the following question of great public importance:
 

 In any claim for personal injury protection benefits in which the insurance carrier has withdrawn, reduced benefits or denied further benefits, is it a condition precedent pursuant to Section 627.736(7)(a), Florida Statutes, that an insurer obtain a report by a physician licensed under the same chapter as the treating physician stating that the treatment was not reasonable, related or necessary in order for the insurance carrier to defend a suit for reduction, withdrawal or denial of further payments on the grounds of reasonableness, necessity or relationship?
 

 
 *1063
 

 Id.
 
 at 321. The Third District answered the question in the affirmative. In applying principles of statutory construction, including the principle that Florida’s no fault laws will be construed liberally in favor of the insured, the court concluded that the county court properly ruled that the insurer “was required to first obtain a physician’s report before refusing to pay further medical bills.”
 
 Id.
 
 at 321.
 

 In
 
 Derius II,
 
 the court considered the following question of great public importance:
 

 Must an insurance company, who seeks to reduce bills for medical treatment[] pursuant to Section 627.736(l)(a), first obtain a report from a physician licensed under the same licensing chapter as the treating physician stating that the hills for treatment are not reasonable, pursuant to Section 627.736(7)(a), Florida Statutes?
 

 773 So.2d at 1191. The court answered the question in the negative. There, the insured “reduced the amount of some of the doctor bills submitted by [the insured], prompting [the insured] to sue [the insurer] ... on the basis that the PIP statute required a report from a physician before no-fault benefits could be denied, withheld, or reduced.”
 
 Id.
 
 The court stated that the issue on appeal was “whether a PIP insurer must first obtain a report from a like-licensed physician in order to contest the reasonableness of a treating physician’s bill.”
 
 Id.
 

 The court held that section 627.736(7)(a) does not “requir[e] a written report as a condition precedent to reducing payment of a bill for treatment on the grounds of reasonableness, necessity or relationship.” 773 So.2d at 1191. The
 
 Deñus II
 
 court distinguished the holding in
 
 Viles
 
 on the basis that the “insurer [in
 
 Viles
 
 ] withdrew all payments for treatment as fraudulent and not related to the accident,” while in
 
 Deñus II
 
 the court dealt “only with the reduction of a physician’s bill.”
 
 Id.
 

 State Farm argues that the circuit court violated a clearly established principle of law by applying the holding in
 
 Viles
 
 to the denial of a single charge and in failing to apply the holding in
 
 Deñus II.
 

 As State Farm contends, the instant case is controlled by the reasoning of
 
 Deñus II
 
 rather than by the reasoning of
 
 Viles.
 
 In
 
 Viles,
 
 the insurer withdrew payment of any further bills it had not yet paid. There is no indication that the insured was continuing to receive treatment. Even though the certified question was stated in broad terms, the holding in
 
 Viles
 
 only applies to the withdrawal or termination of payments or to the withdrawal or termination of authorization for treatment. The court in
 
 Viles
 
 quoted
 
 Derius v. Allstate Indemnity Co. (Derius
 
 I), 723 So.2d 271, 273 (Fla. 4th DCA 1998), which characterized the withdrawal of payment under section 627.736(7)(a) as the “termination of payment.” The court in
 
 Viles
 
 went on to hold that “because [the insurer] failed to comply with the statutory condition precedent, its
 
 termination
 
 of PIP benefits was ineffective.” 726 So.2d at 321 (emphasis added). This supports the conclusion that the denial of one charge is not within the scope of section 627.736(7)(a). Instead, section 627.736(7)(a) covers circumstances involving the complete termination of payments to a physician.
 

 This conclusion flows from the relevant language of section 627.736(7)(a), which states that “[a]n insurer may not
 
 withdraiv payment of a treating physician ...,
 
 unless the insurer first obtains a valid report by a Florida physician licensed under the same chapter
 
 as the treating physician whose treatment authorization is sought to be withdmm,
 
 stating that treatment was not reasonable, related, or nec
 
 *1064
 
 essary.” (Emphasis added.)
 
 Withdraw
 
 means “to take back or away (something bestowed or possessed).”
 
 Webster’s 3d New International Dictionary
 
 2626 (1993). The denial of a single claim for payment does not constitute the withdrawal of a physician’s “treatment authorization.” By its plain and unambiguous terms, section 627.736(7)(a) does not address situations in which one charge for treatment has been denied by the insurer.
 

 The fact pattern presented by the instant ease is covered not by section 627.736(7)(a) but by section 627.736(4), which is titled, “BENEFITS; WHEN DUE.” Subsection (4)(b) provides:
 

 Personal injury protection insurance benefits paid pursuant to this section shall be overdue if not paid within 30 days after the insurer is furnished written notice of the fact of a covered loss and of the amount of same. If such written notice is not furnished to the insurer as to the entire claim, any partial amount supported by written notice is overdue if not paid within 30 days after such written notice is furnished to the insurer. Any part or all of the remainder of the claim that is subsequently supported by written notice is overdue if not paid within 30 days after such written notice is furnished to the insurer.
 
 When an insurer pays only a portion of a claim or rejects a claim, the insurer shall provide at the time of the partial payment or rejection an itemized, specification of each item that the insurer had reduced, omitted, or declined to pay and any information that the insurer desires the claimant to consider related to the medical necessity of the denied treatment or to explain the reasonableness of the reduced charge,
 
 provided that this shall not limit the introduction of evidence at trial; and the insurer shall include the name and address of the person to whom the claimant should respond and a claim number to be referenced in future correspondence. However, notwithstanding the fact that written notice has been furnished to the insurer,
 
 any payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment.
 
 For the purpose of calculating the extent to which any benefits are overdue, payment shall be treated as being made on the date a draft or other valid instrument which is equivalent to payment was placed in the United States mail in a properly addressed, postpaid envelope or, if not so posted, on the date of delivery.
 
 This paragraph does not prechide or limit the ability of the insurer to assert that the claim was unrelated, was not medically necessary, or was unreasonable or that the amount of the charge was in excess of that permitted under, or in violation of, subsection (5).
 
 Such assertion by the insurer may be made at any time, including after payment of the claim or after the 30-day time period for payment set forth in this paragraph.
 

 (Emphasis added.) This subsection provides that when a claim is denied because the claim was unrelated, medically unnecessary, or unreasonable, the insurer must only provide reasonable proof that the insurer is not responsible for the claim. It does not require that the insurer obtain a valid report based on an actual examination by a physician.
 

 III.
 
 Conclusion
 

 Here, the circuit court incorrectly interpreted the plain language of section 627.736(7)(a) and failed to apply the correct law, which is set forth in section 627.736(4). The effect of the legal error in the circuit court’s decision is exacerbated because the decision “establishes a rule of
 
 *1065
 
 general application” for future eases in county court.
 
 Progressive Express Ins. Co.,
 
 913 So.2d at 1287. We therefore conclude that certiorari relief is appropriate because “there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.”
 
 Kaklamanos,
 
 843 So.2d at 889. State Farm’s petition for writ of certiorari is granted, and the circuit court’s order is quashed.
 

 Petition granted.
 

 SILBERMAN and WALLACE, JJ., Concur.