SHEPHERD, J.,
dissenting.
The issue in this second-tier certiorari case is whether the physician report requirement, found in the “withdrawal of benefit” section of Florida’s Motor Vehicle No-Fault Law, section 627.736(7)(a), Florida Statutes (2002) (emphasis added), applies as well to a decision of a personal injury protection (PIP) carrier, Granada Insurance Company, to deny a claim or make a partial payment without terminating coverage. The Miami-Dade County Court found that a physician’s report was required, and the circuit court appellate division affirmed the decision of the county court per curiam without written opinion. Upon review of the petition before us, I conclude: (1) the decision of the circuit court appellate division constitutes a departure from the essential requirements of law, and (2) the per curiam affirmance issued by the circuit court appellate division does not preclude us from granting relief. Accordingly, I would grant the petition.
I. The Facts
On April 24, 2002, Granada insured, Manuel Escalar, was injured in an automobile accident. Dr. Mark Cereceda, a chiropractor, treated Escalar from April 30 through September 3, 2002. Escalar assigned his right to receive insurance benefits to Dr. Cereceda. On August 8, 2002, Dr. Dennis Kogut performed an independent medical examination (IME) on Esca-lar at the behest of Granada. Dr. Kogut concluded Escalar had reached maximum medical improvement. On September 9, Granada received Dr. Cereceda’s bills. On October 21, Dr. Jeffrey Senter performed a peer review of Dr. Cereceda’s bills and concluded that many services provided Es-calar were not reasonable, related, or necessary (RRN) within the meaning of the PIP statute. On November 27, before any payment was offered or made to him, Dr. Cereceda sued Granada, alleging the insurer had unlawfully “reduced and/or denied payment for medical treatment.” On December 2, after the lawsuit was filed, Granada tendered a check to Dr. Cereceda for $2740 — the sum for the services Dr. Senter found proper — in full settlement of his claim. Dr. Cereceda refused to accept that amount, stating his bills totaled $11,315. On July 12, 2005, the county court granted summary judgment to Dr. Cereceda for the full amount of his claim on the ground that Granada had not obtained a proper medical report. The court stated:
[F]or an insurance carrier to defend a suit for reduction, withdrawal, or denial *1244 of further payments on the grounds of reasonableness, necessity or relationship by use of a medical report (such as a peer review), that obtaining such a report is a condition precedent pursuant to F.S. § 627.736(7)(a).
At the hearing on the motion, Granada argued the physician report requirement of section 627.736(7)(a) does not apply where, as here, the insurer has never withdrawn payment to the provider or contested the authorization to continue treatment. Rather, argued Granada, the applicable statute is section 627.736(4)(b), Florida Statutes (2002), which does not require a physical examination where treatment is denied or the charges submitted for payment are reduced. Upon review of the county court order, the circuit court appellate division affirmed the decision of the county court per curiam without opinion. By a timely filed petition for certiorari, Granada now seeks review in this Court.
II. The Departure
On second-tier certiorari review, our review is limited to whether the petitioner was afforded due process rights and whether the circuit court appellate division departed from the essential requirements of law. See Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 889 (Fla.2003). A departure from the essential requirements of law means the failure to apply the correct law. Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 530 (Fla.1995). (“ ‘[A]pplied the correct law' is synonymous with ‘observing the essential requirements of law.’ ”). “[I]n addition to case law dealing with the same issue of law, an interpretation of a statute, a procedural rule, or a constitutional provision may be the basis for granting certiorari review.” Kaklamanos, 843 So.2d at 890.
This case involves an interpretation of a statute. In fact, there are two statutory provisions in play in this case: one pertaining to denial or partial payment of a PIP claim, section 627.736(4)(b), and one pertaining to withdrawal from making further payments after having first committed to and making payments to a treating physician, section 627.736(7)(a). Side-by-side, the statutes read:
*1245 The Denial or Reduction Provision § 627.736(4)(b), Fla. Stat. (2002)
(4) BENEFITS; WHEN DUE. — Benefits due from an insurer under ss. 627.730-627.7405 shall be primary, . . and shall be due and payable as loss accrues, upon receipt of reasonable proof of such loss and the amount of expenses and loss incurred which are covered by the policy.
(b)When an insurer pays only a portion of a claim or rejects a claim, the insurer shall provide at the time of the partial payment or rejections an itemized specification of each item that the insurer had reduced, omitted, or declined to pay and any information that the insurer desires the claimant to consider related to the medical necessity of the denied treatment or to explain the reasonableness of the reduced charge, provided that this shall not limit the introduction of evidence at trial; . . . However, notwithstanding the fact that written notice has been furnished to the insurer, any payment shall not be deemed overdue when the insurer has reasonable proof to establish that the insurer is not responsible for the payment.. . . This paragraph does not preclude or limit the ability of the insurer to assert that the claim was unrelated, was not medically necessary, or was unreasonable or that the amount of the charge was in excess of that permitted under, or in violation of, subsection (5). Such assertion by the insurer may be made at any time, including after payment of the claim or after the 30-day time period for payment set forth in this paragraph.
§ 627.736(4)(b) (emphasis added).
The Withdrawal Provision § 627.736(7)(a), Fla. Stat. (2002)
(7) MENTAL AND PHYSICAL EXAMINATION OF INJURED PERSON; REPORTS.—
(a) Whenever the metal or physical condition of an injured persons covered by personal injury protection is material to any claim that has been or may be made for past or future personal injury protection insurance benefits, such person shall, upon the request of an insurer, submit to mental or physical examination by a physician or physicians.
An insurer may not withdraw payment of a treating physician without the consent of the injured person covered by the personal injury protection, unless the insurer first obtains a valid report by a physician licensed under the same chapter as the treating physician whose treatment authorization is sought to be withdrawn, stating that treatment was not reasonable, related, or necessary.
§ 627.736(7)(a) (emphasis added).
Thus displayed, it is plain that the only statutory obligation an insurer has if it either rejects or pays only a portion of a claim is an itemized specification of each item the insurer has reduced, omitted, or declined to pay and such additional information as the insurer desires the claimant to consider. See § 627.736(4)(b). However, if an insurer has commenced payment of a “treating physician” (not just any doctor), and during the course of treatment desires to cease compensating that physician, the insurer must obtain a bona fide and valid medical report stating that the treatment is not RRN. A moment’s reflection exhibits the intuitive justification for the distinction. Withdrawal by an insurer of financial support for treatment underway can be a more nuanced, controversial, and disruptive action than a pretreatment coverage denial or partial payment of a particular bill. See Mark K. Delegal & *1246 Allison P. Pittman, Florida No-Fault Insurance Reform: A Step in the Right Direction, 29 Fla. St. U. L. Rev. 1031, 1044-45 (2002). In our case, the treatment was long since completed. A plain reading of section 627.736(7)(a) demonstrates it does not apply.
In granting Dr. Cereceda’s motion for summary judgment, the county court unfortunately placed substantial reliance on some regrettably imprecise language in an earlier case issued by this Court, United Automobile Insurance Co. v. Viles, 726 So.2d 320 (Fla. 3d DCA 1998). In Viles, as in the instant case, an insured filed suit seeking PIP benefits for injuries sustained in a car accident. Viles’ insurance carrier, United Auto, defended on the ground the chiropractic bills in question were fraudulent and not reasonably related to the accident. However, unlike in our case, United Auto paid $1100 to Viles before refusing payment of the remaining bills. Id. at 320. The county court found that Viles was entitled to a full recovery because United Auto failed to obtain a physician’s report prior to denying payment. The county court then certified the following question to us:
In any claim for personal injury protection benefits in which the insurance carrier has withdrawn, reduced benefits or denied further benefits, is it a condition precedent pursuant to Section 627.736(7)(a), Florida Statutes, that an insurer obtain a report by a physician licensed under the same chapter as the treating physician stating that the treatment was not reasonable, related or necessary in order for the insurance carrier to defend a suit for reduction, withdrawal or denial of further payments on the grounds of reasonableness, necessity or relationship?
Id. at 321. Although Viles is clearly a withdrawal case, we breezily “answer[ed] the certified question in the affirmative,” id., arguably allowing an impression that section 627.736(7)(a), Florida Statutes (1997), requires an insurer to obtain a physician’s report as a condition precedent to denying or reducing benefits. However, a careful reading of Viles reveals that the actual holding of the case only applies to “withdrawing or denying further medical payments.” Id. at 320 (emphasis added). In short, some payments already must have been made by the insurer to the treating physician to trigger the physician’s report condition. This reading of Viles is supported by one of our sister courts when considering precisely the same issue we have before us. See State Farm Mut. Auto. Ins. Co. v. Rhodes & Anderson., D.C., P.A., 33 Fla. L. Weekly D839, D840, — So.3d —, —, 2008 WL 786856 (Fla. 2d DCA 2008) (“[T]he holding in Viles only applies to the withdrawal or termination of payments or to the withdrawal or termination of authorization for treatment.”).
In fact, the opinion of the Second District Court of Appeal in State Farm supplies the correct analysis for this case. In State Farm, the Second District had before it three separate county court cases in which Rhodes and Anderson, D.C., P.A., another chiropractic clinic, provided treatment to State Farm’s insureds for auto accident injuries. Id. at -, at D839. State Farm denied payment for diagnostic tests on the basis they were not RRN. The county court, concluding that denials of payment constituted withdrawals under section 627.736(7)(a), entered summary judgment against State Farm, reasoning that State Farm did not obtain the required medical reports before ceasing to pay for medical treatment to the insureds. Id. State Farm appealed the orders to the circuit court appellate division, arguing denials of payment did not constitute withdrawals under subsection (7)(a), but rather *1247 were governed by section 627.436(4)(b), which does not require a physical examination before payment is denied. The circuit court appellate division affirmed the decision of the county court, but on certiorari review, the Second District, in an opinion authored by then Second District Court of Appeal Judge Charles Canady, held that subsection (4)(b) is applicable when an insurer denies benefits. In so doing, Judge Canady wrote the “plain and unambiguous terms [of] section 627.786(7)(a) do[] not address situations in which one charge for treatment has been denied by the insurer.” Id. at -, at D840. Instead, drawing upon the definition found in Webster’s 3d International Dictionary 2626 (1993), that “withdraw” means “to take back or away (something bestowed or possessed),” Judge Canady concluded that the fact pattern presented in State Farm was governed by subsection (4)(b). State Farm, 33 Fla. L. Weekly at D840, — So.3d at —. “This subsection,” wrote Judge Ca-nady, “provides that when a claim is denied because the claim was unnecessary, or unreasonable, the insurer must only provide reasonable proof that the insurer is not responsible for the claim. It does not require that the insurer obtain a valid report based upon an actual examination by a physician.” Id. Similarly, in our case, the insurer, Granada, did not withdraw benefits, but, at most, offered a reduced payment. Section 627.736(7)(a) does not apply.
Lastly, I would be remiss if I did not mention we recently repeated the Viles misstep — again in dicta — in another of our cases, United Automobile Insurance Co. v. Bermudez, 980 So.2d 1213 (Fla. 3d DCA 2008), rh’g denied, May 30, 2008. Unlike the case before us, Bermudez was a withdrawal case. Id. at 1215, n. 1 (“The parties agree and we concur that this case involves the withdrawal of PIP benefits and not denial of PIP coverage.”). In addition, the issue in Bermudez was not whether a medical report was a requirement for withdrawal of benefits to an insured, but rather whether a physician’s report that had been prepared for United Auto by Dr. Peter Millheiser without an actual physical examination, offered to support a withdrawal of PIP benefits, was a “valid report” for that purpose within the meaning of section 627.736(7)(a). The county court granted Bermudez’s motion for summary judgment on the narrow ground that Dr. Millheiser’s report was not a “valid report” under subsection (7)(a). The county court then certified the question to us as one of great public importance pursuant to Florida Rule of Appellate Procedure 9.160. Rephrased, we articulated the question as:
WHETHER A MEDICAL REPORT ISSUED FOR THE WITHDRAWAL OF PERSONAL INJURY PROTECTION BENEFITS PURSUANT TO SECTION 627.736(7)(a), FLORIDA STATUTES MUST BE BASED UPON A PHYSICAL EXAMINATION OF THE INSURED THAT IS PERSONALLY CONDUCTED BY THE PHYSICIAN ISSUING THE REPORT.
Id. at 1214. We reversed the decision of the county court, holding that “a medical report issued for the withdrawal of PIP benefits may be based on a physical examination of the insured that is conducted by either the physician preparing the report or another physician’s examination.” Id. at 1215.
Although the labor necessary to decide the case was at an end, we nevertheless proceeded to consider and disagree with State Farm, 33 Fla. L. Weekly at D839, — So.3d at —, which had issued just weeks before. With the concurrence of both counsel that State Farm’s holding was incorrect, we “reaffirm[ed] our holding in Viles that a valid report is required *1248 where an insurer attempts to reduce, withdraw, or deny PIP benefits on the grounds of reasonableness, necessity, or relationship.” Bermudez, 980 So.2d at 1216 (quoting Viles, 726 So.2d at 321) (footnote omitted). In my view, we should recede from the dicta of Viles and Bermudez on the basis of State Farm, but not from their essential, necessary, correct holdings on the issues actually presented to those panels. This is especially so where, as here, these decisions appear to “ ‘establish ] a rule of general application’ for future cases in county court, ‘thus exacerbating the effect of the ... legal error.’ ” State Farm, 38 Fla. L. Weekly at D839, — So.3d at — (quoting Progressive Express Ins. Co. v. McGrath Cmty. Chiropractic, 913 So.2d 1281, 1287 (Fla. 2d DCA 2005)); see also Gould v. State, 974 So.2d 441 (Fla. 2d DCA 2007); State Farm Fla. Ins. Co. v. Lorenzo, 969 So.2d 393, 398 (Fla. 5th DCA 2007).
III. The Per Curiam Affirmance
Although it is clear the county court applied the incorrect law, it is equally clear that our law does not permit us to grant relief unless it can be said that the circuit court appellate division itself applied the incorrect law in its per curiam affirmance. In the usual case, this Court for good and salutary reason, does not reach behind a circuit court appellate division per curiam affirmance to grant relief. However, we are authorized to do so where the reason for the per curiam affirmance is clear. See Auerbach v. City of Miami, 929 So.2d 693, 694 (Fla. 3d DCA 2006) (granting petition for writ of certiorari where failing to quash circuit court appellate division decision “would create both a direct conflict with other Third District decisions and an unjustified approval of the obvious failure of the circuit court appellate division to apply the correct law”).
Unlike other cases wherein alternate grounds might make it difficult to determine on what basis the circuit court appellate division affirmed the county court decision, in this instance, the only ground raised by Granada on appeal to the circuit court appellate division was the erroneous application of section 627.736(7)(a). Dr. Cereceda advanced two grounds for affir-mance: that the county court did apply the correct law, or alternately, that Dr. Sen-ter’s peer review report and affidavit contained facts that would be inadmissible in evidence because the report contained hearsay. The latter ground was never presented or argued at the hearing on Dr. Cereceda’s motion for summary judgment or at any other hearing. The central issue presented in this case, from the filing of the complaint through the petition in this case, has been whether an insurer who denies payment or pays some rather than all benefits under a personal injury protection insurance policy must support such a decision with a physician’s report. I find it highly improbable the county court — and therefore by implication the circuit court appellate division — based its decision on anything other than the application of sections 627.736(4)(b) and (7)(a). In my view, our failure to grant relief and quash the decision of the circuit court appellate division constitutes an “unjustified approval of the obvious failure of the circuit court appellate division to apply the correct law.” See Auerbach, 929 So.2d at 694.
In a proper case, this Court has previously granted second-tier certiorari review from per curiam affirmances. See, e.g., id. (granting relief from a per curiam affirmance of circuit court appellate division where there was an “undisputed showing” that the variance approved by city commission was “totally unsupported by the legal ‘hardship’ required by the governing City of Miami ordinance to justify that relief ”); Ferrara v. Cmty. Developers, Ltd., 917 So.2d 907 (Fla. 3d DCA 2005) (reviewing *1249 circuit court appellate division’s per curiam affirmance of county court’s decision to award attorney fees to Community Developers, Ltd., and denying petition for writ of certiorari); State v. Bock, 659 So.2d 1196 (Fla. 3d DCA 1995) (granting petition for writ of certiorari from circuit court appellate division per curiam affirmance); State v. Richard, 610 So.2d 107, 107-08 (Fla. 3d DCA 1992) (holding the trial court applied the wrong version of Florida Rule of Criminal Procedure 3.191 and granting relief from a per curiam affirmance); Kneale v. Jay Ben Inc., 527 So.2d 917 (Fla. 3d DCA 1988) (granting certiorari from per curiam affirmance of circuit court appellate division); Sengra Corp. v. Metro. Dade County, 476 So.2d 298, 299 (Fla. 3d DCA 1985) (reviewing per curiam affirmance of circuit court appellate division and denying certiorari petition); but see Zuckerman v. A & B Window & Glass, Inc., 943 So.2d 218, 218 (Fla. 3d DCA 2006) (stating that although “we might conclude that the county court judgment and therefore its affirmance by the circuit court were erroneous, we cannot say that they so far departed from the essential requirements of law as to result in a miscarriage of justice as is required to justify our review at this stage”); Stilson v. Allstate Ins. Co., 692 So.2d 979 (Fla. 2d DCA 1997) (concluding the county court incorrectly granted summary judgment on PIP coverage claim, but stating lack of authority to correct error because circuit court’s per curiam affirmance did not violate clearly established principle of law resulting in miscarriage of justice). This is a proper case.
IV. Conclusion
In the instant case, it is unrefuted Granada never paid Dr. Cereceda. As such, this is a denial case, or, at most an offer of a reduced payment. The circuit court appellate division erred in approving the county court’s decision to apply subsection (7)(a). It is our responsibility and duty to exercise our discretion to grant certiorari where “there has been a violation of [a] clearly established principle of law resulting in a miscarriage of justice.” See Haines, 658 So.2d at 528. This is especially true where, as here, the seriousness of the error is one that is likely to recur.
I would grant the petition.